991 F.2d 797
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES, Plaintiff-Appellee,
v.
Thomas HAMILTON, Defendant-Appellant.
 No. 92-1342.
 United States Court of Appeals, Sixth Circuit.
 April 16, 1993.
 
 Before MILBURN and BATCHELDER, Circuit Judges and LIVELY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant-appellant Thomas Hamilton was convicted by a jury on two counts of distribution of crack cocaine within 1000 feet of a school in violation 21 U.S.C. § 841(a)(1) and § 845, and one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). This appeal focuses primarily on Hamilton's entrapment defense to the convictions. We affirm the convictions on all three counts for the reasons set out below.
 
 I.
 1) The Applicable Facts:
 
 2
 In September of 1990, defendant Hamilton became the target of an undercover investigation by Alcohol, Tobacco and Firearms (ATF) agents. Defendant's cousin, Terrence Hamilton, a government informant, introduced defendant to Timothy Brown, another government informant. Brown told defendant Hamilton about ATF Special Agent Joseph Secrete, who was posing undercover as a drug purchaser, and gave Hamilton Secrete's beeper number. Both the government and Hamilton agree that Brown told Hamilton that Secrete was interested in buying drugs and guns, although Hamilton claims that Brown told him that the drugs and gun sales were only for the purpose of paying Secrete back for money he loaned individuals to become involved in a rap music business.
 
 
 3
 Sometime between September 27, 1990, and October 2, 1990, Hamilton beeped Secrete.[1] Secrete phoned Hamilton back, and Hamilton agreed to meet with Secrete. Between September 28 and October 2,[2] Secrete and defendant Hamilton met at a bar in Northwest Detroit. Secrete testified that at that meeting Hamilton brought up the idea of selling Secrete drugs and firearms. In contrast, Hamilton testified that Secrete told him that he was a wealthy person who could help Hamilton in the music recording business if Hamilton sold drugs and firearms for him. Hamilton testified that Secrete said Hamilton would have to sell him a gun to prove that he was not a police officer.
 
 
 4
 Within a few days of their first meeting, Hamilton beeped Secrete again. Secrete returned the call, and Hamilton offered to sell him, and Secrete agreed to buy, a .38 caliber handgun. Secrete testified that Hamilton suggested that they meet that day in the parking lot of the Mercury Theater. The parking lot was within 1000 feet of the St. Vincent de Porres High School. Secrete testified that defendant first appeared without the gun, telling him that he "just came to check things out first." Hamilton, however, testified that he had come to tell Secrete that he had decided not to sell him the gun but that Secrete pressured him into it. Hamilton then left in his car and returned about ten minutes later with a brown paper bag containing a Smith & Wesson .38 caliber revolver. Agent Secrete testified that he bought the gun from Hamilton for $300, although Hamilton claims that Secrete paid him an extra $100 for it.
 
 
 5
 On October 5, Hamilton again paged Secrete. Secrete claims that when he returned the call, Hamilton asked him if he wanted to buy crack cocaine. Secrete met with Hamilton that day in the same parking lot, and Hamilton sold him a bag containing 5.60 grams of crack cocaine, for which Secrete paid $400.
 
 
 6
 On October 15, Hamilton called Secrete,[3] and agreed to meet Secrete to sell him cocaine.[4] Secrete then obtained a criminal complaint and an arrest warrant based on the previous two sales. Later that day, the two met again in the same parking lot, at the suggestion of Hamilton. This time, ATF agents were stationed in a van near Secrete's car. Hamilton got into Secrete's car and pulled a quarter-ounce of crack from his pocket and handed it to Secrete. Secrete then told defendant that he had left his wallet in the trunk, and he stepped out of the car to get it. When he opened the trunk, ATF agents, wearing ATF uniforms and yelling "police" and "freeze," jumped out of the van to arrest defendant. Defendant fled and escaped.
 
 
 7
 Seven weeks later defendant was arrested in Des Moines, Iowa, and indicted by a federal grand jury there for conspiracy to distribute cocaine base. The Iowa indictment was still pending at the time of defendant's trial in this case in the Eastern District of Michigan.
 
 2) District Court Proceedings
 
 8
 On March 7, 1991, a grand jury indicted defendant Hamilton on two counts of distribution of crack cocaine within 1000 feet of a school, in violation 21 U.S.C. § 841(a)(1) and § 845, and one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).[5]
 
 
 9
 On April 2, 1991, Hamilton filed a "Motion For Production of Government Informant," the substance of which asked only that the government be required to disclose the identity of its informant and for an in camera hearing. In support of the motion, defendant argued that the informant helped arrange for the commission of the offense by focusing the government's investigation on Hamilton, by introducing him to Special Agent Secrete, by acting as a liaison between the two, and by inducing defendant to participate in Secrete's request to sell him a gun. The government claimed that, at most, any informant was only a tipster.
 
 
 10
 On June 3, 1991, the magistrate judge, following a hearing on defendant's motion and an in camera review of the informant's affidavit, found that the informant's testimony would not be helpful to Hamilton's entrapment defense and was not required by law, and refused to order the government to reveal his identity. District Court Judge Gadola affirmed the magistrate's ruling.
 
 
 11
 The case then was transferred to District Court Judge Duggan. After the first day of trial, Judge Duggan reversed the magistrate and the original district judge by holding that the government was not privileged from revealing the identity of the confidential informant. Judge Duggan permitted defense counsel to "probe [the relationship]" between Agent Secrete and Timothy Brown. Defense counsel later elicited testimony from Agent Secrete confirming that Brown and Terrence Hamilton were paid government informants. As a result, defense counsel subpoenaed Terrence Hamilton; however, the defense did not seek an order compelling the government to produce Brown nor did he seek to subpoena Brown.
 
 
 12
 At trial, defendant admitted that he had sold the gun and the drugs to Secrete, but raised the defense of entrapment. He claimed that Secrete, using informant Timothy Brown, had induced him to sell the drugs and the gun by promising to loan him money to start a legitimate rap music venture if defendant repaid the loan by selling drugs and splitting the drug profits with Secrete 50/50. To support his entrapment defense, defendant introduced evidence at trial to the effect that he had been introduced to Timothy Brown who represented that he was a rap music producer who had a wealthy friend willing to fund Hamilton's rap music project in return for defendant's selling the friend drugs and a gun; that defendant had indicated his interest in the rap music project but had refused to participate in any illegal activity; and that after repeated urgings, including telephone calls to defendant's home, defendant had eventually given in and sold the drugs and guns to Secrete because he believed Secrete would finance the rap music project.
 
 
 13
 Although the trial judge instructed the jury on the defense of entrapment, defendant was found guilty on all three counts. He now appeals his conviction on several grounds: 1) the district court's failure to order production of Brown; 2) the district court's failure to find that defendant was entrapped; 3) the district court's admission of Hamilton's subsequent Iowa indictment on drug charges; and 4) the district court's failure to dismiss the felon-in-possession charge because Hamilton's rights had been restored under Michigan law. We address these issues below.
 
 II.
 
 14
 Defendant first argues that the magistrate erred in not ordering the government to produce informant Brown, especially when the informant's identity was already known and the informant's testimony was relevant and helpful to his entrapment defense. He also argues that the magistrate's failing to order production of Brown violated his rights to compulsory process and to due process. We affirm the district court's rulings as to informant Brown.
 
 
 15
 As we have indicated, Hamilton's motion for production of the government informant was in substance a motion to reveal the identity of the informant, and was opposed by the government on the grounds that it was not required to produce Brown because he was only a tipster. Following a hearing on defendant's motion and an in camera review, the magistrate judge denied the motion for production of the government informant:
 
 
 16
 I have conducted an in-camera review and I conclude that the testimony of the informant would not be helpful to the defendant's claim of possible entrapment, and indeed, would tend to refute that claim. I further conclude that the government is not required under Roviaro v. United States, 353 U.S. 53 (1957), to disclose the identity of this person.
 
 
 17
 District Judge Gadola affirmed the magistrate judge's ruling.
 
 
 18
 However, at the trial conducted by District Judge Duggan, defense counsel was permitted to cross examine Agent Secrete about whether Brown was a government informant and about his relationship and his meetings with Brown. In the course of this questioning, the defense counsel discovered that Terrence Hamilton was a cooperating individual as well.
 
 
 19
 We find that because the trial judge in effect reversed the decision of the original district court judge by permitting the defense to question Secrete about whether Brown was an informant, defendant's motion was in fact granted. Therefore, defendant's claim of error as to the original district court decision is rendered moot.
 
 
 20
 This case is similar to United States v. Salgado, 807 F.2d 603 (7th Cir.1986), cert. denied, 487 U.S. 1233, 108 S.Ct. 2897 (1988). In that case, the district court originally denied the defendant's motion to disclose the names of the government's confidential informants but granted a renewed motion at trial, ordering that defense counsel be allowed to interview the informant to determine if the defendant had an entrapment defense. The Seventh Circuit held that the defendant could not contest the district court's original ruling because the district court eventually had granted his motion.
 
 
 21
 In these circumstances it is academic whether the district judge's initial ruling, denying the motion to reveal Alan's [the informant's] identity to the defense, violated the standard of Roviaro v. United States.... The judge eventually granted the motion, and there is no indication that Salgado was prejudiced by the delay. If defense counsel had needed more time to explore Alan's role in the transaction he could have asked for a continuance--was indeed invited by the judge to do so.
 
 
 22
 Id. at 605.
 
 
 23
 Similarly, defendant Hamilton has shown no prejudice from the delay in his being permitted to question Secrete about Brown's role in the transactions. The same cross-examination that revealed that Brown was an informant also yielded the information that Terrence Hamilton was a confidential informant. Defense counsel subpoenaed Terrence and called him to testify at trial, yet he neither attempted to subpoena Brown nor asked for the government's help in finding him. Defendant, therefore, was not prejudiced by the delay in the court's ruling that led to the disclosure that Brown was an informant.
 
 
 24
 Defendant apparently not only argues that he had a right to know the name of the informant, but also that he had a right to have the government produce the informant. However, defense counsel did not request either in the substance of any motion or at trial that the government produce Brown. Therefore, we cannot review the production of Brown issue--versus the revelation of Brown issue--unless the failure to order production of Brown was plain error under Federal Rule of Criminal Procedure 52(b). We find that the district court's failure to order the production of Brown did not produce a trial "infected with error so 'plain' that the trial judge and the prosecutor were derelict in countenancing it ..." United State v. Frady, 456 U.S. 152, 163, 102 S.Ct. 1584, 1592 (1982).
 
 
 25
 The failure to order prodution of Brown could be plain error if it violated the Sixth Amendment's Confrontation Clause or Compulsory Process Clause. The Confrontation Clause provides the right to face one's accusers and to conduct cross-examination. Delaware v. Fensterer, 474 U.S. 15, 18-19, 106 S.Ct. 292, 294 (1985) (per curiam). The Sixth Amendment's Compulsory Process Clause allows criminal defendants the right to government assistance to compel the attendance of favorable witnesses at trial and to put before the jury evidence that might influence the determination of guilt. Cool v. United States, 409 U.S. 100, 93 S.Ct. 354 (1972) (per curiam). The government did not have any obligation under the Sixth Amendment's confrontation clause or compulsory process clauses actually to produce Brown for the defendant. As this Court noted in United States v. Moore, 954 F.2d 379, 381 (6th Cir.1992), the Sixth Amendment "does not, however, require the government to call every witness competent to testify, including special agents or informers." Id. "If the evidence upon which a defendant is convicted was secured personally by government agents who testified, the government is not required to produce the cooperating individual." Id. See also Pennsylvania v. Ritchie, 480 U.S. 39, 56, 107 S.Ct. 989, 1000-01 (1987) (court never held that compulsory process clause guarantees right to discover identity of witnesses).
 
 
 26
 In this case, Agent Secrete was present at all three transactions and heard all the relevant phone conversations, while Brown did not participate in any of these events. Thus, the government had no obligation to produce Brown for the defense.
 
 
 27
 In fact, we believe that Judge Gadola's original district court decision refusing to order disclosure of the informant was correct under the Supreme Court's Roviaro decision, and thus, Judge Duggan's subsequent order requiring revelation of the informant's identity was actually more favorable to the defendant than the law requires. Disclosure of confidential informants such as Brown, versus disclosure of non-confidential cooperating individuals, is protected by the qualified privilege set out in Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623 (1957). That privilege permits the government to withhold from disclosure the identity of persons who furnish to the government information about violations of the law, with two exceptions: 1) "once the identity of the informer has been disclosed to those who would have cause to resent the communication, the privilege is no longer applicable....", and 2) "where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." Id. at 60-61, 77 S.Ct. at 627-28. As to the first exception, despite Hamilton's averments to the contrary and despite the defense's affidavits submitted to the trial court stating that Brown was present during the rap music discussions, defendant did not know that Brown was in fact the informant until Secrete revealed that on the stand. As to the second exception, the testimony of Brown may have been relevant to his defense, but it appears that it would not have been helpful. As the magistrate found in reviewing in camera Brown's affidavit,[6]
 
 
 28
 I have conducted an in-camera review and I conclude that the testimony of the informant would not be helpful to the defendant's claim of possible entrapment, and indeed, would tend to refute that claim.
 
 
 29
 Because the magistrate judge, through an in camera review of Brown's affidavit, found that Brown's testimony would not be helpful, the district court was not required to conduct a second in camera review of Brown's story. The burden is on Hamilton to show how disclosure of the informant would substantively assist his defense. Moore, 954 F.2d at 381. Defendant failed to do this. In addition, disclosure usually is required where "the informer was an active participant in the events underlying the defendant's potential criminal liability," but denied where "the informer was not a participant, but was a mere tipster or introducer." United States v. Sharp, 778 F.2d 1182, 1186 n. 2 (6th Cir.1985) (emphasis added), cert. denied, 475 U.S. 1030, 106 S.Ct. 1234 (1986). Here, Brown was not present for any of the transactions, but merely gave defendant Secrete's beeper number.
 
 
 30
 In addition, when a defendant claims an entrapment defense, a defendant must show some evidence of entrapment "before the government is called upon to disclose to the defendant [the] identity of an informant ..." Id. at 1187. The government's evidence did not reveal any evidence of entrapment, and, to the contrary, showed a readiness on the part of Hamilton to sell both the drugs and the gun to Agent Secrete. Hamilton's evidence that there were discussions about rap music ventures and that Brown and Secrete urged him to commit the crimes was not sufficient to show a lack of a predisposition to commit the crime. See Jacobson v. United States, 112 S.Ct. 1535, 1540 (1992) (entrapment occurs if agents plant in innocent person's mind the disposition to commit a crime).
 
 
 31
 Finally, we find defendant's argument that the failure to produce Brown violated his due process rights under the Fourteenth Amendment meritless. The government has the obligation to turn over evidence in its possession that is both favorable to the accused and material to a defendant's guilt or punishment. Brady v. State of Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196 (1963). Evidence is "material" if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Pennsylvania v. Ritchie, 480 U.S. at 56, 107 S.Ct. at 1001 (quoting United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383 (1985)). Here, based on his in camera review of the Brown affidavit, the magistrate judge ruled that Brown's testimony would not have been favorable and would not have changed the result. Hamilton has made no showing otherwise. Therefore, the government did not violate Hamilton's right to due process because the evidence sought would not have been exculpatory.
 
 III.
 
 32
 Defendant next makes two arguments concerning his entrapment defense: first, that the jury erred in finding that he was not entrapped into committing the crimes charged and that we should find that he was entrapped as a matter of law, and second, that the government's actions in inducing him to commit crime were outrageous and therefore violated his due process rights. We affirm the jury's finding that defendant was not entrapped, find that defendant was not entrapped as a matter of law, and reject Hamilton's argument that the government's actions were outrageous.
 
 
 33
 Defendant's first claim that he was entrapped as a matter of law is meritless. The entrapment defense was clearly presented to the jury, which rejected it. On appeal, defendant now argues that the government produced no evidence that he was predisposed to commit the offenses of selling drugs and a gun. The government is correct in characterizing this argument as a sufficiency of the evidence claim related to whether defendant was entrapped. Because defendant never made a motion for Judgment of Acquittal under Rule 29 of the Federal Rules of Criminal Procedure, he has waived his right to challenge the sufficiency of the evidence, unless the jury's rejection of the entrapment defense constitutes "plain error resulting in a 'manifest miscarriage of justice.' " United States v. Cox, 957 F.2d 264, 265 (6th Cir.1992) (quoting United States v. Swidan, 888 F.2d 1076, 1080 (6th Cir.1989)).
 
 
 34
 It was not a miscarriage of justice for the jury to reject the entrapment defense. Government agents may " 'afford opportunities or facilities for the commission of the offense.... Artifice and stratagem may be employed to catch those engaged in criminal enterprise.' " Sorrells v. United States, 287 U.S. 435, 441, 53 S.Ct. 210, 212 (1932). What government agents may not do is "originate a criminal design, implant in an innocent person's mind the disposition to commit a criminal act, and then induce commission of the crime so that the Government may prosecute." Jacobson, 112 S.Ct. at 1540. When a person has been induced to break the law and the defendant claims entrapment, the government must prove beyond reasonable doubt "that the defendant was disposed to commit the criminal act prior to first being approached by Government agents." Id. The Supreme Court in Jacobson noted that in a typical case where an agent offers the opportunity to buy or sell drugs, "the entrapment defense is of little use because the ready commission of the criminal act amply demonstrates the defendant's predisposition." Id.
 
 
 35
 Here, government agents had information that Hamilton was selling drugs before they began their investigation and sting. In addition, unlike the 26 months of inducement in Jacobson, here defendant, by his own admission, learned of Agent Secrete and chose to meet with him three times within the span of two weeks. Thus, there was sufficient evidence from which a jury could find that defendant was predisposed to commit, and had in fact been committing, such crimes before the government's involvement.
 
 
 36
 Although it was not plain error for the jury to reject the entrapment defense, there is one exception to the general rule that "[t]he question of entrapment is generally one for the jury, rather than for the court." Mathews v. United States, 485 U.S. 58, 63, 108 S.Ct. 883, 886 (1988); United States v. Barger, 931 F.2d 359, 366 (6th Cir.1991). "Entrapment as a matter of law" has been recognized, but only when the following elements are met:
 
 
 37
 the testimony and facts must be undisputed; a court may not choose between conflicting testimony or make credibility determinations. Furthermore, undisputed evidence must demonstrate a 'patently clear' absence of predisposition. If either of these elements is missing, then the predisposition question is for the jury to decide.
 
 
 38
 Barger, 931 F.2d at 366 (quoting United States v. Pennell, 737 F.2d 521, 534 (6th Cir.1984), cert. denied, 469 U.S. 1158, 105 S.Ct. 906 (1985)). In examining this entrapment as a matter of law argument, we must view the evidence in the light most favorable to the prosecution and resolve all reasonable inferences in its favor. United States v. McLernon, 746 F.2d 1098, 1111 (6th Cir.1984). Here, the testimony concerning who initiated the sales and what the government promised defendant was clearly disputed and thus a jury question, and defendant did not produce undisputed evidence demonstrating a "patently clear absence of predisposition." Barger, 931 F.2d at 366. Therefore, the issue of entrapment was for the jury to decide, and a finding of entrapment as a matter of law clearly is not appropriate.
 
 
 39
 Defendant's second claim that the government's actions constituted outrageous conduct and thereby violated his due process rights is also without merit. This Circuit has been reluctant to find that government conduct violates due process because "to do so would greatly intrude into the law enforcement functions of the executive branches of federal and state governments." United States v. Norton, 700 F.2d 1072, 1075 (6th Cir.), cert. denied, 461 U.S. 910, 103 S.Ct. 1885 (1983). In United States v. Barger, 931 F.2d at 359, we articulated four factors for determining if governmental conduct is outrageous:
 
 
 40
 (1) the need for the police conduct as shown by the type of criminal activity involved, (2) the impetus for the scheme or whether the criminal enterprise preexisted the police involvement, (3) the control the government exerted over the criminal enterprise, and (4) the impact of the police activity on the commission of the crime.
 
 
 41
 Id. at 363. Applying these factors to this case, it is beyond cavil that police intervention is necessary to stop the sale of drugs and the possession of guns by felons, and police conduct clearly was needed to intercept this particular defendant who had bragged to Agent Secrete that he had recently gotten out of jail for a previous drug offense but was smarter now and would not be caught again. The impetus for the crimes came from the defendant, and the criminal enterprise of selling drugs existed before Secrete talked to defendant, as is demonstrated by the evidence that the government's agent merely gave defendant his beeper number and that the drugs and gun sales were proposed by defendant. And, Secrete testified that Hamilton was targeted by agents because they had information that defendant had been selling drugs. Even if one accepted the defendant's view that the government concocted a drugs, gun and rap music scheme, the disposition and the criminal enterprise clearly preexisted the government scheme, although the impetus might have come from the government. Id. at 364; see United States v. Robinson, 763 F.2d 778, 785 (6th Cir.1985) (preexisting criminal enterprise test); United States v. Norton, 700 F.2d at 1075, (impetus for scheme test). As for the third and fourth factors--the control that the government exerted over the criminal enterprise and the impact of the police activity on the commission of the crime--there is no evidence to support a finding that the government exerted any more than minimal control over the criminal enterprise. The government's working with informants and having an informant give defendant a beeper number clearly does not violate due process. Barger, 931 F.2d at 364. Even if the government had created the plan, this alone is not enough to constitute outrageous conduct if the defendant willingly agreed to the plan. Id. Under the Barger test, the government's conduct in this case clearly was not outrageous.
 
 IV.
 
 42
 Defendant next argues that the district court committed reversible error in admitting the grand jury indictment for the pending drug charges in Iowa. We find that the district court did not err in admitting the Iowa indictment.
 
 
 43
 In this case, after Hamilton introduced evidence in support of his entrapment claim, the government sought to introduce evidence of Hamilton's subsequent arrest and indictment in Iowa on drug charges. Defendant objected. After hearing argument from counsel, the district court permitted the government to introduce evidence of this subsequent drug arrest, finding that:
 
 
 44
 I am satisfied that an incident seven weeks later has sufficient probative value that it should be allowed in view of the defendant's assertion of the defense of entrapment. I believe that the fact that an incident occurred seven weeks later is not sufficiently distant that the Court can conclude that it has no probative value on the defendant's state of mind seven weeks earlier.
 
 
 45
 The defendant then stipulated to admitting the Iowa indictment, rather than have the government introduce witnesses to testify as to the indictment. At the close of evidence, the judge instructed the jury:
 
 
 46
 You have received evidence that the defendant committed some acts other than those charged in the indictment. Specifically, you have heard evidence that the defendant has been charged with an indictment filed in the State of Iowa with conspiracy to distribute cocaine base. You cannot consider this evidence to prove that the defendant did the acts that he is on trial for now. Instead, you can only consider it in deciding whether the defendant was already willing to commit the crimes with which he is charged in this indictment. Do not consider it for any other reason.
 
 
 47
 Defendant objects to the admission of the indictment.
 
 Federal Rule of Evidence 404(b) states:
 
 48
 Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 
 
 49
 Fed.R.Evid. 404(b). In reviewing a Rule 404(b) determination, a district court must decide first, "as a matter of preliminary fact whether there is sufficient evidence that the prior act occurred." United States v. Gessa, 971 F.2d 1257, 1261 (6th Cir.1992) (en banc). This factual determination is reviewed under the clearly erroneous standard. Id. at 1262. Second "a legal determination must be made whether the 'other act' allegedly committed by the defendant was admissible as evidence of 'intent, preparation, [or] plan.' " Id. at 1261. This legal determination is reviewed de novo. Third, the district court must determine whether the "other acts" evidence is more unfairly prejudicial than probative. This final balancing is reviewed only for an abuse of discretion. Id.; United States v. Acosta-Cazares, 878 F.2d 945, 948-51 (6th Cir.), cert. denied, 493 U.S. 899, 110 S.Ct. 255 (1989).
 
 
 50
 First, the district court did not need to make the initial factual determination under Gessa that the Iowa incident occurred because the defendant stipulated to the admission of the Iowa indictment rather than to have the government put on witnesses to describe the Iowa incident. Therefore, the defendant cannot now question the sufficiency of the evidence presented indicating that the incident occurred.
 
 
 51
 Second, the district court made the correct legal determination under Gessa that the "other act" allegedly committed by the defendant was admissible for some other purpose than to show a propensity to commit crime, such as intent, knowledge or plan. This evidence was admissible to rebut defendant's defense of entrapment. The indictment alleging that defendant sold drugs rebuts his assertion that he was entrapped and goes to the issue of whether defendant was already willing and predisposed to commit the crimes charged when he was given the agent's beeper number. It also is probative of defendant's intent and state of mind in selling Secrete the drugs and the gun because the Iowa incident could indicate that defendant did not in fact sell the contraband to Secrete only because of the promise to finance the rap music project but instead intended to sell the gun and the drugs to make money.
 
 
 52
 Third, the district court did not abuse its discretion in admitting the evidence because the "other acts" evidence was not more unfairly prejudicial than probative. United States v. Blankenship, 954 F.2d 1224, 1229 (6th Cir.), cert. denied, 113 S.Ct. 288 (1992). Although the district court did not make findings on the record as to the balancing of the probative value versus the prejudicial effect, that is not grounds for reversal where "defense counsel did not request any balancing, and where review of the record in this case indicates that the evidence was properly admissible." United States v. Acosta-Cazares, 878 F.2d at 951. The balancing analysis "may be subsumed in the court's ruling admitting the evidence." Id. at 950. Here, the defense counsel did not request an on-the-record balancing, and the record indicates that the probative value was not substantially outweighed by the prejudicial effect. The Iowa incident was probative of defendant's intent and state of mind near the time of the charged offense and was necessary to rebut defendant's claim of entrapment. Cf. United States v. Feinman, 930 F.2d 495, 499 (6th Cir.1991) (involvement in prior shipment of marijuana went to defendant's knowledge); United States v. Robison, 904 F.2d 365, 368 (6th Cir.) (evidence of drug deal five months before charged offense probative of intent), cert. denied, 498 S.Ct. 946, 111 S.Ct. 360 (1990).
 
 
 53
 The fact that the Iowa incident occurred seven weeks after the charged offense does not make it unduly prejudicial, although it may lessen the probative value of this evidence. Seven weeks is a sufficiently short period of time to be reflective of whether defendant was entrapped by the particular circumstances in the charged offense or whether he was already willing to commit such a crime at the time of the offense. See United States v. Posner, 865 F.2d 654, 657-58 (5th Cir.1989) (upholding admission of evidence of an attempted drug purchase more than 3 1/2 months after the end of the charged cocaine conspiracy in order to rebut an entrapment defense). And any prejudicial effect was minimized with the limiting instruction given by the district court, instructing the jury that they could consider the evidence only for the purpose of determining whether defendant was already willing to commit the crimes charged. Therefore, the Iowa indictment was properly admitted.
 
 V.
 
 54
 Finally, defendant challenges his felon-in-possession conviction on the grounds that Michigan has restored his rights, and therefore he cannot be convicted under 18 U.S.C. § 922(g)(1). We reject defendant's challenge to the felon-in-possession conviction because his rights had not been restored under Michigan law. United States v. Driscoll, 970 F.2d 1472 (6th Cir.1992), cert. denied, 113 S.Ct. 1056 (1993), is entirely dispositive of this issue.
 
 VI.
 
 55
 For the reasons set out above, we AFFIRM defendant Hamilton's conviction.
 
 
 
 [1]
 The testimony is conflicting on when Hamilton beeped Secrete. Defendant claimed that it was on September 27, 1990; Secrete testified that it was on October 2, 1990
 
 
 [2]
 The government claims that the two met on October 2, 1990, while Hamilton testified that the date was September 28, 1990
 
 
 [3]
 Secrete testified that he called Hamilton on this occasion, but Hamilton testified that he called Secrete. Hamilton testified that he called Secrete about getting the money Secrete promised to loan him to start his business
 
 
 [4]
 Hamilton stated that he agreed to bring Secrete the cocaine only because Secrete requested it for his personal use
 
 
 [5]
 The felon-in-possession charge was based on the fact that on February 7, 1990, Hamilton had been convicted in state court of a felony narcotics offense of possession of cocaine. He was released from prison on August 10, 1990
 Defendant argues that the district court should have conducted an in camera interview of Brown, rather than permitting the magistrate judge to conduct an in camera review of Brown's affidavit. However, using an in camera review of an affidavit is clearly appropriate. See United States v. Sharp, 778 F.2d 1182, 1187 (6th Cir.1985), cert. denied, 475 U.S. 1030, 106 S.Ct. 1234 (1986).