**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Alvin MOORE, Defendant–Appellant.**

No. 91–1230.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 28, 1991.

Decided Jan. 21, 1992.

Rehearing and Rehearing En Banc
Denied March 5, 1992.

**380**

J. Michael Buckley, Asst. U.S. Atty. (argued & briefed), Detroit, Mich., for U.S.

Herbert A. Jordan (argued & briefed), Detroit, Mich., for Alvin Moore.

Before RYAN and BOGGS, Circuit Judges, and GODBOLD, Senior Circuit Judge.*

GODBOLD, Senior Circuit Judge.

Alvin Moore appeals from his conviction on two counts of distribution of dilaudid and one count of possession of dilaudid with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Moore asserts that he was denied his Sixth Amendment right to confront witnesses because the district court denied his motion to compel production of a confidential informant. He complains about a jury instruction that permit-

ted the government to comment on the nonproduction of a witness and, he asserts, impermissibly shifted the burden of proof. Moore also contends that the district court inappropriately interfered with defense counsel's statements to the jury that they consider the evidence without considering race. Finally, Moore urges that government counsel improperly commented on his ability to afford private counsel.

We affirm the conviction on all counts.

Moore did not dispute making the three deliveries on which the charges were based. Rather, he asserted that his actions were the product of a deteriorated mental condition caused by his wife's death from cancer. He contended that from this experience he developed a pathological need to relieve suffering and that this need motivated him to fulfill requests for pain-killers by "Jim," a cooperating individual, who falsely represented that he suffered from debilitating pain. Moore also asserted an entrapment defense, which the jury rejected.

Jim arranged all three transactions. He was present only at the first buy with Agent Rannazzisi. Agent Rannazzisi completed the second and third buys on his own.

After Moore's arrest he waived his constitutional rights and made an incriminating statement.

■ On the first day of trial defense counsel asked the government if it would be producing Jim. The government responded that it did not intend to call him as a witness. Defense counsel stated that he had expected the government to produce Jim and requested disclosure and production of this witness, saying only that he was "important to the defense." The court denied this request. Later the court revisited the issue, and defense counsel again was unable to articulate specifically how Jim's testimony would relate to the defense.

* The Honorable John C. Godbold, Senior Circuit Judge for the United States Court of Appeals for the Eleventh Circuit, sitting by designation.

On the fourth day defense counsel asked again, asserting that Jim's testimony could test or substantiate entrapment. The court explored the matter further and counsel finally said, "Well, fine. I'll make a decision after he comes in, listen, as to whether or not we want to proceed further with the type of questions I want to ask. That's my strategy." The court again denied Moore's request for disclosure and production of the cooperating individual.

Moore contends that refusal to disclose or produce the CI violated the confrontation clause and the right to compulsory process. Specifically, he points to the government proof, through examination of Agent Rannazzisi, that the CI had said to Moore that prostitutes enjoy dilaudid tablets, i.e., "Hookers liked pills." The government's theory was that this statement tended to show Moore's state of mind and to rebut his claim that he was motivated by a pathological need to relieve sufferers. Moore testified that Jim never made this statement.

■ We review the district court's decision to deny defendant's motion for compulsory process under an abuse of discretion standard. *Dorsey v. Parke*, 872 F.2d 163, 166 (6th Cir.), *cert. denied*, 493 U.S. 831, 110 S.Ct. 103, 107 L.Ed.2d 67 (1989).

■ The Sixth Amendment guarantees to a defendant the right to confront witnesses against him and to have compulsory process for witnesses in his favor. U.S. Const.Amend. VI. The Sixth Amendment does not, however, require the government to call every witness competent to testify, including special agents or informers. *U.S. v. Craig*, 477 F.2d 129 (6th Cir.1973). If the evidence upon which a defendant is convicted was secured personally by government agents who testified, the government is not required to produce the cooperating individual. *Id.* at 131. Agent Rannazzisi was present for the three transactions for which Moore was convicted. Moore's right to confront witnesses against him was not abrogated.

■ Further, with respect to compelling production of confidential informants,

the Supreme Court has made it clear that "no fixed rule with respect to disclosure is justifiable." *Roviaro v. U.S.*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). The court must "balanc[e] the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id.* at 62, 77 S.Ct. at 628–629. Mere invocation of this right does not automatically outweigh the public interest in protecting confidential informants. *Taylor v. Illinois*, 484 U.S. 400, 414, 108 S.Ct. 646, 655, 98 L.Ed.2d 798. An informant must be disclosed only upon a showing by the defendant that disclosure is essential to a fair trial. *U.S. v. Hanna*, 341 F.2d 906, 907 (6th Cir.1965).

■ Moore's argument that the *Roviaro* rule does not apply because Jim was not a confidential informant since Moore had met Jim face-to-face is without merit. In closing argument defense counsel acknowledged that Moore did not know Jim's last name or who Jim was. Clearly, Jim was a confidential informant.

■ The district court did not err in refusing to compel disclosure of Jim. The burden was on Moore to show how disclosure of the informant would substantively assist his defense. *U.S. v. Willis*, 473 F.2d 450, 452 (6th Cir.) *cert. denied*, 412 U.S. 908, 93 S.Ct. 2290, 36 L.Ed.2d 974 (1973). He advanced no more than a simple statement that Jim's testimony might assist in his defense. Defense counsel's final statement, quoted above, set out a strategy, not a need, for deciding whether to use the CI as a witness after he was produced. In his own testimony Moore denied that the CI even made the statement that "Hookers liked pills," which his counsel asserted the CI would describe. Summarizing, Moore's request was untimely; he failed to demonstrate that testimony to be given by the CI was relevant or helpful; and, finally, Moore himself denied that the particular

statement about which he desired the CI to testify had been made at all. The district court struck the correct balance by denying disclosure of the confidential informant.

The court instructed the jury on inferences that may be drawn from a party's failure to call a witness. The judge stated,

It is particularly within the power either of the prosecution or the defense to produce a witness who could give material testimony on an issue in the case. Failure to call that witness may give rise to an inference that his testimony would be unfavorable to that party. However, no conclusion should be drawn by you with regard to a witness who is equally available to both parties or where the witness' testimony would be merely cumulative. Again, the jury will always bear in mind that the law never imposes upon a defendant in a criminal case the burden or duty of calling any witness or producing any evidence.

Defendant argues that this instruction impermissibly shifted the burden of proof by permitting the jury to draw an inference adverse to the defense from the nonproduction of the CI. In closing argument, however, defense counsel used phrases almost identical to this instruction and later agreed that the instruction be formally read to the jury. The district court did not err in giving this instruction since defense counsel agreed to its use.

During opening statement defense counsel expressed concern about race as a basis for the jury's deliberations. He exhorted the jury to act impartially, objectively, and fairly. Counsel for the government objected, and the court sustained the objection. Defendant says that the court interfered with his right to an impartial trial because it prevented defense counsel from lecturing the jury on the importance of judging the evidence without considering defendant's race. In response to the government's pretrial motion in limine, defendant previously had stipulated that race was not an issue in the trial.

During closing argument, the government referred to defense counsel's comments on defendant's education and salary. Specifically, government counsel stated,

Ladies and gentlemen of the jury, Mr. Pitts told you what the man's salary is. What does that have to do with anything? If you find Alvin Moore not guilty, only because he works at Ford and makes sixty to seventy thousand dollars a year and could afford a Mr. Pitts to represent him, what you're saying is if you find him not guilty—

Defense counsel objected to the comment on Moore having retained counsel and the court sustained the objection.

Moore now claims that this statement, in and of itself, denied him due process because it constituted an attack on his Sixth Amendment right to retain counsel.

The district court's determinations on the issues of prosecutorial misconduct, for which defendant requested a mistrial, are reviewed for abuse of discretion. *U.S. v. Buckley*, 934 F.2d 84, 89 (6th Cir.1991). Defendant was not denied a fair trial merely by the court interrupting defense counsel's exhortation that the jury not consider race during its deliberations or by government counsel's fleeting and isolated comment on defendant's ability to retain counsel.

AFFIRMED.