16 F.3d 1224
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Gregory Lee WILSON, Petitioner-Appellee,
v.
Michael O'DEA, Warden, Respondent-Appellant.
 Nos. 92-6348, 92-6411.
 United States Court of Appeals, Sixth Circuit.
 Jan. 10, 1994.
 
 Before: MILBURN and BATCHELDER, Circuit Judges; and COHN, District Judge.*
 PER CURIAM.
 
 
 1
 Respondent Michael O'Dea appeals (Case No. 92-6348) the district court's order granting a conditional writ of habeas corpus to petitioner Gregory Lee Wilson under 28 U.S.C. Sec. 2254. Petitioner cross-appeals (Case No. 92-6411) the district court's denial of habeas corpus relief on other grounds. On the original appeal, the sole issue is whether the district court erred in granting conditional habeas corpus relief to petitioner on the ground that petitioner was denied a fair trial because the identity of a confidential informant was not disclosed. On cross-appeal, the sole issue is whether the district court erred in refusing to grant habeas relief to petitioner based upon his claim that the trial court deprived him of his rights to due process and to confront the witness against him through an allegedly improper admonition given to the jury. For the reasons that follow, we affirm.
 
 I.
 A.
 
 2
 On October 1, 1984, petitioner was indicted by the Jefferson County, Kentucky, Grand Jury on charges of capital murder, first-degree robbery, and for being a first-degree persistent felony offender. The charges resulted from the shooting of Jesse Sanders. Sanders was shot to death at his home in Louisville, Kentucky, when he answered his front door at approximately 1:00 a.m. on July 3, 1984.
 
 
 3
 Initially, petitioner Wilson, Robin Darby, and Roy Woods were jointly charged with the murder of Jesse Sanders. However, the charges against Darby were dismissed prior to trial in return for her testimony against petitioner. After pleading guilty to charges of criminal facilitation to murder, Woods also testified against petitioner.
 
 
 4
 Darby testified that on the night in question she, Woods, and petitioner Wilson were driving around together. The trio stopped at Sanders' home to purchase drugs. Darby testified that petitioner and Woods went to the front door of Sanders' home, after which she heard a gunshot. When petitioner and Woods returned to the car, Darby testified that petitioner told her that Sanders "tried to buck me." J.A. 221.
 
 
 5
 Woods testified that it was Darby, not petitioner, who shot Sanders. Woods admitted, however, that when he had entered his guilty plea he stated that petitioner had shot Sanders.
 
 
 6
 Petitioner testified on his own behalf; he denied being at Sanders' home on the night of the murder. He testified that he was at home with his girl friend earlier that evening and that later on that night he was with a friend, Iran Neal. Petitioner testified that he returned to his girl friend's home around midnight and that the two of them went to pick up their children.
 
 
 7
 The jury returned a verdict of guilty of wanton murder against petitioner Wilson; it recommended a life sentence without eligibility for parole for twenty-five years. Following the imposition of the sentence recommended by the jury, petitioner appealed to the Kentucky Supreme Court. On April 30, 1987, the Kentucky Supreme Court affirmed the conviction but remanded the case for resentencing due to the jury's failure to find the existence of aggravating circumstances which would support its recommended sentence.
 
 
 8
 On remand, the trial court denied petitioner's request for resentencing by a jury and imposed a life sentence. Petitioner again appealed to the Kentucky Supreme Court. The Kentucky Supreme Court again reversed the life sentence on February 9, 1989. See Wilson v. Commonwealth, 765 S.W.2d 22 (Ky.1989). Upon resentencing, petitioner agreed to accept an offer of 27 years of imprisonment in lieu of jury resentencing, conditioned on his right to challenge the underlying conviction. An order imposing the 27-year sentence was entered on November 30, 1989.
 
 B.
 
 9
 Petitioner filed a petition for a writ of habeas corpus under 28 U.S.C. Sec. 2254 on December 4, 1991, asserting two grounds for relief. Respondent O'Dea, the Warden of the Kentucky State Reformatory, filed his answer on February 3, 1992. Subsequently, the matter was referred to a magistrate judge, who, on September 1, 1992, issued a report and recommendation, finding that both of the grounds raised by petitioner were meritorious and recommending that the writ be issued. Respondent filed timely objections to the magistrate judge's report and recommendation.
 
 
 10
 Following de novo review in light of respondent's objections, the district court issued a memorandum opinion granting a conditional writ of habeas corpus on September 30, 1992. The district court found that petitioner was entitled to a new trial due to the state's failure to disclose the name of the confidential informant. The district court also held, however, that petitioner was not entitled to habeas relief on his claim concerning the allegedly improper admonition to the jury, because petitioner had procedurally defaulted on this claim.
 
 
 11
 On October 8, 1992, respondent filed a timely notice of appeal and a motion to stay enforcement of the writ of habeas corpus pending disposition of this appeal. Thereafter, petitioner filed a timely cross-appeal. On November 4, 1992, the district court granted respondent's motion to stay enforcement of the writ of habeas corpus pending this appeal.
 
 II.
 A.
 
 12
 Respondent argues that the district court erred in determining that petitioner was entitled to habeas relief based upon the trial court's failure to disclose the identity of the confidential informant. Prior to trial, defense counsel filed a pretrial motion seeking disclosure of the confidential informant's name. Two evidentiary hearings were held on the motion. At the hearing on March 11, 1985, Detective Dave Ernst, a Louisville police officer, testified concerning the telephone call which he received from the confidential informant. Detective Ernst testified that he had received information through a confidential informant that co-defendant Roy Lee Woods, Jr., was responsible for the shooting. Detective Ernst testified that after the shooting, his confidential informant was standing on a street corner in Louisville and overheard Lisa Waller telling someone that she was outside the victim's house and had witnessed the shooting. Ernst testified that the confidential informant told him that the informant overheard Waller state that she had seen "Big Black," who was identified as petitioner; "Little Roy," who was identified as Woods; and Robin Darby in an orange car. The informant told Ernst that Waller stated that "They were going to attempt to rip off some dope. The dope dealers allegedly knew who Big Black was, and then he moved off." J.A. 165. The informant heard Waller further state that she observed the three pull up in the car next to the victim's house, that Darby knocked on the door, that Big Black and Little Roy came around to the front of the house and Darby ran to get the car. The informant overheard Waller state that she heard a shot, "looked up and saw Big Black and Little Roy running towards the car, ... and that she saw Little Roy with the gun." J.A. 165-66. Detective Ernst also testified that based upon the information received from the informant that Lisa Waller had stated that Woods had the gun immediately after the shooting, he and other police officers assumed that Woods was the triggerman.
 
 
 13
 After hearing Ernst's testimony, the trial court stated that the informant's testimony "would be a pretty crucial bit of evidence when we are talking about who had the gun." J.A. 272. However, the trial court also noted that if Waller testified that Woods had the gun, the defense would not need to impeach her testimony, only the prosecution would.
 
 
 14
 A second evidentiary hearing was held on October 7, 1985, at which time Lisa Waller testified. Waller testified that she told the police she saw three people running from the victim's house on the night of the shooting and that shortly thereafter she saw an orange car with three people in it. She stated that as the car drove away, one of the occupants yelled at her, "Lisa, you freaky bitch," and that she recognized the voice as that of Roy Lee Woods, Jr. J.A. 181. Waller also testified that she told the police she recognized Robin Darby but that she could not identify the third occupant of the vehicle. Waller then twice denied that she had ever told anyone that Roy Lee Woods, Jr. did the shooting. Detective Ernst was then called to testify; he testified that the informant told him that the person responsible for the death of Jesse Sanders was Roy Lee Woods, Jr. and that the informant said she knew this because she overheard Lisa Waller talking on a street corner. Detective Ernst also testified that the informant told him Waller stated that although she did not see the shooting, she heard the shot, that she saw the people running from the scene, and that Roy Lee Woods, Jr. had the gun as they left.
 
 
 15
 Following the hearing, defense counsel explained:
 
 
 16
 I may need that informant to impeach Ms. Waller. In other words if the informant can say and I don't know who she had, I've not talked to her. Detective Ernst may not want to identify her to me but the informant may say, "Lisa Waller told me that she saw the homicide and that not Gregory Wilson but Roy Woods was the trigger man and if that is what the informant is capable of testifying about, then I need that informant because then we take the gun out of Gregory's hand and put it in the hand of the co-defendant."
 
 
 17
 J.A. 188. Defense counsel then asked how he could investigate the case without the informant's name. The trial judge asked defense counsel what he would do if he had the informant's name and called her at trial. Defense counsel responded, "I would call Lisa Waller as a witness and then impeach her with the informant as such." J.A. 192. Subsequently, the trial judge overruled defense counsel's motion to disclose the identity of the confidential informant.
 
 
 18
 The Supreme Court has held that the government has a "privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." Roviaro v. United States, 353 U.S. 53, 59 (1957). The privilege furthers the public interest in effective law enforcement, recognizes the obligations of citizens to communicate knowledge of the commission of crimes to law enforcement officials, and encourages such obligations by preserving the anonymity of such informants. United States v. Whitley, 734 F.2d 1129, 1137 (6th Cir.1984). The privilege is not absolute, however. It " 'is limited where the disclosure of an informer's identity, or of the contents of [an informer's] communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause.' " Id. (quoting Roviaro, 353 U.S. at 60).
 
 
 19
 There is no fixed rule regarding disclosure. United States v. Moore, 954 F.2d 379, 381 (6th Cir.1992). Rather, on a case-by-case basis, the courts must " 'balanc[e] the public interest in protecting the flow of information against the individual's right to prepare a defense.' " Id. (quoting Roviaro, 353 U.S. at 62). "In balancing those competing interests in the context of a criminal case, courts must consider 'the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.' " Holman v. Cayce, 873 F.2d 944, 946 (6th Cir.1989) (quoting Roviaro, 353 U.S. at 62).
 
 
 20
 The identity of "[a]n informant must be disclosed only upon a showing by the defendant that disclosure is essential to a fair trial." Moore, 954 F.2d at 381. Where the informant is not a participant or witness to the events underlying the defendant's potential criminal liability, the balance is heavily in favor of nondisclosure. Holman, 873 F.2d at 946 (citing United States v. Sharp, 778 F.2d 1182, 1186 n. 2 (6th Cir.1985), cert. denied, 475 U.S. 1030 (1986)). In cases involving "tipsters" who merely convey information to the government but neither witness nor participate in the offense, disclosure is generally not material to the outcome of the case and is therefore not required. United States v. Harrington, 951 F.2d 876, 878 (8th Cir.1991); Phillips v. Cardwell, 482 F.2d 1348, 1349-50 (6th Cir.1973) (per curiam). Where the informant is not a participant or witness to the offense, disclosure occurs only in exceptional circumstances where the defendant demonstrates "some concrete circumstance that might justify overriding both the public interest in encouraging the flow of information, and the informant's private interest in his or her own safety." United States v. Martinez, 922 F.2d 914, 921 (1st Cir.1991).
 
 
 21
 In this case, the record shows that the confidential informant was neither a participant nor witness to the shooting of the victim, Jesse Sanders. Rather, the evidence shows that the confidential informant was a mere tipster and that the information which the informant provided to the Louisville police was hearsay. Specifically, the day after the crime was committed, the informant called Detective Ernst and told him that the informant had overheard a conversation between Lisa Waller, an alleged witness to the shooting of Jesse Sanders, and another person. The context of the conversation overheard by the confidential informant has been stated above.
 
 
 22
 More importantly, at the first hearing on the motion to disclose the informant's identity, Detective Ernst testified as to the information relayed to the police by the informant, including the identity of the alleged witness, Lisa Waller. Further, Lisa Waller testified at the second hearing on the motion to disclose. Waller testified that she did not see the actual shooting, but apparently she heard the gunshot. Waller testified that she saw three people running from the scene and later fleeing in an orange car. Waller was able to identify two of the three individuals; viz., Roy Lee Woods, Jr., and Robin Darby. However, she was unable to identify petitioner. Although the confidential informant told the police that Waller had stated that the gun was in Woods' hands following the shooting, Waller twice denied that she had made such a statement. It also appears from the record that Waller's testimony at the hearing was consistent with the statement or statements she made to the Louisville police when she was questioned after the police received the "tip" from the confidential informant. Neither the prosecution nor the defense called Waller as a witness at trial. Thus, because the informant in this case was a mere tipster, the balance of factors in this case weighs heavily in favor of nondisclosure.
 
 
 23
 However, petitioner argues that if the confidential informant's identity had been disclosed, he could have used the confidential informant to impeach Waller's testimony that she never saw who had the gun by using the confidential informant to testify that Waller had stated that she saw the gun in Woods' hands after the shooting. Under Kentucky law, "the credibility of any witness, including one's own witness, may be impeached by showing that the witness has made prior inconsistent statements." Wise v. Commonwealth, 600 S.W.2d 470, 472 (Ky.Ct.App.1978). Moreover, "any out-of-court statement made by a witness which is material and relevant to the issues in the case may be received as substantive evidence through testimony of another witness." Id. Thus, the confidential informant's statements that she overheard Waller state that she saw the gun in Woods' hands after the shooting could have been received not only as evidence but also as substantive evidence under Kentucky law. Consequently, the nondisclosure of the confidential informant's identity deprived petitioner of an opportunity to place evidence before the jury which would have shown that immediately following the shooting the gun was in the hands of his co-defendant, Woods, rather than in his hands.
 
 
 24
 Given the nature of the evidence in this case; viz., it was essentially a swearing contest between petitioner, Woods, and Darby; and the seriousness of the charge against petitioner, wanton murder, these factors weigh heavily in favor of disclosure of the identity of the confidential informant. Furthermore, the prosecution also failed to establish the existence of a possible threat to the confidential informant if his or her identity were disclosed, and the prosecution also failed to establish that it had previously received reliable information from the confidential informant or that it expected to receive additional information from the confidential informant in the future.
 
 
 25
 Therefore, although the confidential informant's status as a nonparticipant and nonwitness to the crime weighs heavily in favor of nondisclosure, the other factors in the case, particularly the exculpatory nature of the confidential informant's statement, weigh more heavily in favor of disclosure. Accordingly, the petitioner has established the existence of a concrete circumstance which overrides the public interest in maintaining the anonymity of the confidential informant. Thus, the district court did not err in determining that petitioner was entitled to habeas relief based upon the nondisclosure of the confidential informant's identity.
 
 B.
 
 26
 Petitioner argues on cross-appeal that the district court erred in denying his petition for habeas relief based upon the trial court's admonition to the jury during Robin Darby's trial testimony. In relying on this court's decision in McBee v. Abramajtys, 929 F.2d 264 (6th Cir.1991), the district court concluded that petitioner's claim concerning the trial court's admonition to the jury was barred because there was no contemporaneous objection made to the trial court's admonition, and the Supreme Court of Kentucky found that this was an independent procedural ground for the rejection of the claim.
 
 
 27
 During trial, defense counsel asked Robin Darby if she had been indicted for complicity in the death of Jesse Sanders and if those charges had been dismissed. Darby answered both questions in the affirmative. At that point, the trial court stated that it would take judicial notice that it had dismissed the charges against Darby, and it admonished the jury that the dismissal of the charges was unrelated to the case.
 
 
 28
 A sidebar conference between the judge, defense counsel, and the prosecutor ensued. During the sidebar conference, the judge informed petitioner's counsel that he intended to admonish the jury once again after counsel finished his line of questioning. The following exchange then took place:
 
 
 29
 Mr. Skora (defendant's counsel): Judge, it's fine with me if the Court wishes to tell the jury that the dismissal was made by a motion of the Commonwealth. I wish it would.
 
 
 30
 The Court: Shall I also tell them that the Commonwealth intends to do justice when it dismisses a case against a person who has wrongfully been accused of a crime?
 
 
 31
 * * *
 
 
 32
 The Court: How far should I go?
 
 
 33
 Mr. Skora: Judge, I think that would be going too far.
 
 
 34
 The Court: In other words, you want me to go to that point which is advantageous to you, but not to the point which tells the whole truth?
 
 
 35
 Mr. Skora: Judge, you have not heard the entire case.
 
 
 36
 The Court: Obviously not, but I cannot rule in light of what the entire case may be. I must rule as the facts come before the court.
 
 
 37
 Mr. Skora: Okay.
 
 
 38
 J.A. 217-18.
 
 
 39
 The trial court then gave the following admonition to the jury:
 
 
 40
 The questioning which is now undertaken with reference to this witness is, as the Court has explained, the defense counsel's effort to present to you some rationale or reasoning for this witness having given the testimony which she did. I think you all understand that. The Court is also admonishing you it did, in fact, dismiss a count against this witness with reference to the charge herein involved against Mr. Wilson. But the Court also admonishes you that it dismisses matters at the request of the Commonwealth in instances where it is just to do so.
 
 
 41
 J.A. 218-19. Defense counsel made no objection following the trial court's admonition.
 
 
 42
 On direct appeal, the Supreme Court of Kentucky stated:
 
 
 43
 No objection was entered to the admonition as given although there had been some prior discussion concerning the language of the admonition. Any alleged error was harmless.
 
 
 44
 Wilson argues that the last six words of the admonition, "It is just to do so," mandate reversal because this language interjected the personal opinion of the trial judge as to the credibility of the witness. We do not agree because the language challenged could be easily attributed to the reason for dismissal and not the credibility of the witness. It does not amount to reversible error. The error, if any, is not only not preserved, it is also harmless.
 
 
 45
 J.A. 150.
 
 
 46
 Federal courts will not consider an issue of federal law on direct review from a state court judgment if that judgement is based upon a state law ground that is both independent of the merits of the federal claim and an adequate basis for the court's decision. Harris v. Reed, 489 U.S. 255, 261 (1989). This doctrine "has been applied routinely to state decisions forfeiting federal claims for violation of state procedural rules." Id. For the forfeiture to apply, "the state court must actually have relied on the procedural bar as an independent basis for its disposition of the case." Id. "[A]n adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show 'cause' for the default and 'prejudice attributable thereto.' " Id. at 262 (quoting Murray v. Carrier, 477 U.S. 478, 485 (1986). "[A] federal claimant's procedural default precludes federal habeas review, like direct review, only if the last state court rendering a judgment in the case rests its judgment on the procedural default." Id.
 
 
 47
 "[F]ederal courts on habeas corpus review of state prisoner claims ... will presume that there is no independent and adequate state ground for a state court decision when the decision 'fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the opinion.' " Coleman v. Thompson, 111 S.Ct. 2546, 2557 (1991) (quoting Michigan v. Long, 463 U.S. 1032, 1040-41 (1983)). However, "[i]n those cases in which it does not fairly appear that the state court rested its decision primarily on federal grounds, it is simply not true that the 'most reasonable explanation' is that the state judgment rested on federal grounds." Coleman, 111 S.Ct. at 2558.
 
 
 48
 Furthermore, "[i]f the last state court to be presented with a particular federal claim reaches the merits, it removes any bar to federal court review that might have been available." Ylst v. Nunnemaker, 111 S.Ct. 2590, 2595 (1991). However, where the state court clearly and expressly rests its decision on two alternative grounds, procedural default or substantive lack of merit, the procedural bar does apply to prevent habeas review. Abramajtys, 929 F.2d at 267.
 
 
 49
 "Under Wainwright v. Sykes, 433 U.S. 72, 87, 97 S.Ct. 2497, 2506, 53 L.Ed.2d 594 (1977), a defendant's failure to object at his state trial may constitute 'an independent and adequate state procedural ground' sufficient to foreclose federal habeas corpus review if the state has a contemporaneous objection rule and has not waived its application." Lanigan v. Maloney, 853 F.2d 40, 42 (1st Cir.1988), cert. denied, 488 U.S. 1007 (1989). Kentucky has a contemporaneous objection rule. Tuggle v. Seabold, 806 F.2d 87, 90 (6th Cir.1986). Kentucky's contemporaneous objection requirement precludes appellate review of matters which are not objected to unless manifest injustice results. Hockenbury v. Sowders, 620 F.2d 111, 113 (6th Cir.1980), cert. denied, 450 U.S. 933 (1981). Thus, the decision of the Supreme Court of Kentucky that petitioner had not preserved his challenge to the trial court's admonition is an adequate and independent procedural state ground for denying petitioner's claim, which this court must honor unless petitioner can show cause and prejudice for the procedural default. Id. Furthermore, contrary to petitioner's argument, the fact that the Supreme Court of Kentucky concluded that petitioner's assertion of error concerning the admonition was substantively meritless does not lift the procedural bar to habeas review, because the Supreme Court of Kentucky stated its substantive decision on the merits as an alternative ground to the procedural default. Specifically, as previously noted, the Kentucky Supreme Court stated, "The error, if any, is not only not preserved, it is also meritless." J.A. 150.
 
 
 50
 Thus, the district court correctly concluded that the finding of procedural default by the Supreme Court of Kentucky is an adequate and independent state ground sufficient to bar federal habeas review of petitioner's assertions of error concerning the trial court's admonitions to the jury. However, as petitioner points out in his brief on appeal, the district court did not address the issue of cause and prejudice in its order, and there has been no determination of whether cause and prejudice for the procedural default exists in this case. In his brief on appeal, petitioner asserts that he can establish cause and prejudice based upon his counsel's ineffective assistance in failing to object to the trial court's admonition.
 
 
 51
 However, in his petition for a writ of habeas corpus petitioner did not address the issue of cause and prejudice. Specifically, petitioner did not assert that cause and prejudice existed for his procedural default. Thus, because petitioner did not plead that he could prove cause and prejudice for the procedural default, that issue was not before the district court.
 
 
 52
 Moreover, although petitioner has now raised the issue of cause and prejudice for the first time on appeal, absent exceptional circumstances this court will not address an issue not raised for the first time before the district court. Taft Broadcasting Co. v. United States, 929 F.2d 240, 243-45 (6th Cir.1991). This is particularly true where, as here, no record on the issue of cause and prejudice has been developed for this court to review. See e.g., Pinney Dock & Transp. Co. v. Penn Cent. Corp., 838 F.2d 1445, 1461 (6th Cir.), cert. denied, 488 U.S. 880 (1988). Accordingly, the district court properly concluded that petitioner's procedural default bars habeas review of his claim concerning the trial court's admonition to the jury.
 
 III.
 
 53
 For the reasons stated, the district court's conditional grant of the writ of habeas corpus on the ground that the trial court committed reversible error in failing to order disclosure of the identity of the confidential informant is AFFIRMED. Further, the district court's finding that federal habeas review of petitioner's claim concerning the trial court's admonition to the jury is barred by his procedural default is AFFIRMED.
 
 
 54
 BATCHELDER, Circuit Judge, dissenting.
 
 
 55
 Because I do not believe, on a review of the entire record, that the failure to disclose the tipster's identity resulted in a "fundamentally unfair" trial, I must respectfully dissent.
 
 
 56
 As the majority notes, the confidential informant in this case was neither a participant nor witness to the shooting; as a result, the confidential informant was a mere tipster. This court has held that "[w]hen the informant has not been 'an active participant in the events underlying the defendant's potential criminal liability,' the balance weighs heavily toward nondisclosure." Holman v. Cayce, 873 F.2d 944, 946 (6th Cir.1989) (quoting United States v. Sharp, 778 F.2d 1182, 1186 n. (6th Cir.1985), cert. denied, 475 U.S. 1030 (1986)). The facts of this particular case do not support a finding that the public interest in protecting the flow of information was outweighed by the defendant's right to prepare a defense. See United States v. Moore, 954 F.2d 379, 381 (6th Cir.1992).
 
 
 57
 I also do not believe that the "fundamental requirements of fairness" required disclosure of the tipster's identity. See Roviaro v. United States, 353 U.S. 53, 60 (1957). In her testimony, Lisa Waller disclosed the identities of the people to whom she had talked; one of whom was almost certainly the tipster. There is no evidence in the record that any effort was made to contact these individuals. Despite the seriousness of the nature of the crime and the fact that the testimony in this case was little more than a "swearing match," the non-disclosure of the tipster's identity did not render the trial fundamentally unfair; and, as a result, I am unable to join the majority.