UNITED STATES of America,
Plaintiff–Appellee,

v.

Roland Hayes EDMONDS,
Defendant–Appellant.

No. 02–6320.

United States Court of Appeals,
Sixth Circuit.

Aug. 6, 2004.

Rehearing En Banc Denied Oct. 18, 2004.

Perry H. Piper, Asst. U.S. Attorney, Chattanooga, TN, for Plaintiff–Appellee.

Clayton M. Whittaker, Foster, Durrence, Ward & Whittaker, Chattanooga, TN, for Defendant–Appellant.

Roland H. Edmonds, Edgefield, SC, pro se.

Before DAUGHTREY, GIBBONS, and COOK, Circuit Judges.

PER CURIAM.

The defendant, Roland Hayes Edmonds, appeals his conviction for possession of cocaine base with intent to distribute, for which he was sentenced to 210 months' imprisonment. He contends that the judgment of conviction should be reversed because (1) the district court erred in denying the motion to suppress, (2) the government should have been required to divulge the identity of the confidential informant at trial, and (3) the government failed to provide certain exculpatory documents to the defense. We find no reversible error and affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

At some point prior to July 2000, Detective Joseph Harper of the Chattanooga Police Department received information that the defendant was selling crack cocaine from a residence located at 1215 Poplar Street Court in Chattanooga. Consequently, Harper began observing the dwelling and, on August 14, 2000, he sent a confidential informant into the apartment to purchase some of the illegal drug. Based upon the results of that "controlled buy," and upon information provided by the confidential informant that "a large amount of crack cocaine" was present in the house at that time, Harper prepared an affidavit in support of an application for a warrant to search the premises.

A state general sessions judge granted the request and, on August 16, 2000, Harper, together with fellow police officers, proceeded to 1215 Poplar Street Court to execute the warrant. Upon approaching the rear door of the residence, the police knocked and announced their presence. Hearing "what sounded like people running around inside," Harper used a passkey to enter the dwelling. According to Sergeant David Roddy, another Chatta-

nooga police officer who was then on the scene:

I made my way into the back area of the residence, and upon arrival to the bathroom, which was about the first door on the left, I encountered Mr. Edmonds on his knees in front of the commode, with his hand on the handle, and I heard the commode start to flush. I looked into the commode, and there appeared to be one bag of crack cocaine and six bags of what appeared to be marijuana swirling in the water.... At that time I pushed [Edmonds] to the floor, because he would not get out of my way. As I pushed him away, I felt Officer Noorbergen come back behind me at that time. I knew Officer Noorbergen would cover Mr. Edmonds, so I holstered my firearm and used my right hand to retrieve the one bag of crack and five of the six bags of marijuana from the commode. Another one managed to go down the drain before I could get to it. As I was retrieving them, I threw them into the sink which was located right next to the commode.

Edmonds was arrested and brought before a federal magistrate judge for a preliminary examination. Detective Harper was not present, but Detective Randy Dunn, another Chattanooga police officer familiar with the case, testified that Harper had been conducting surveillance on the home at 1215 Poplar Street Court "for approximately a month" and "had made an undercover buy" from the defendant. The case was then bound over to the grand jury, which returned a one-count indictment charging Edmonds with possession of crack cocaine with the intent to distribute.

Prior to trial, the defendant moved to suppress the evidence seized from the Poplar Street Court home on the ground that Harper had made material misstatements in his affidavit in support of his warrant application. The magistrate judge who conducted an evidentiary hearing on the matter concluded that there were no grounds presented to justify suppression of the challenged evidence. The district judge adopted that recommendation, denied the suppression motion, and conducted a bench trial on the charge of drug possession with the intent to distribute. At the conclusion of the trial, the district court issued a memorandum and order finding the defendant guilty as charged. Subsequent motions for a new trial were denied, and this appeal followed.

## DISCUSSION

When reviewing the district court's denial of a motion to suppress evidence, we defer to district court findings of fact unless they are clearly erroneous. We review legal conclusions de novo, however. *See United States v. Carpenter,* 360 F.3d 591, 594 (6th Cir.2004) (en banc).

### 1. The *Franks* Issue

On appeal, Edmonds first asserts that his suppression motion should not have been denied because Joseph Harper, the police officer who prepared the affidavit to the warrant application, made material statements in that affidavit that were deliberately false or that were made with reckless disregard for their truth or falsity. Specifically, the defendant claims that statements made in the affidavit regarding the controlled buy of crack cocaine and the surveillance of the 1215 Poplar Street Court residence differed from other evidence presented and that removal of the statements from consideration by the district judge would negate the existence of probable cause for the search.

In *Franks v. Delaware,* 438 U.S. 154, 171, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the United States Supreme Court empha-

sized the long-standing "presumption of validity with respect to the affidavit supporting [a] search warrant." The Court then explained, however, that a criminal defendant could challenge the legitimacy of a search under certain circumstances by attacking the truthfulness of the allegations made in the affidavit supporting the warrant application. As this court has summarized:

> [A] court considering whether to suppress evidence based on an allegation that the underlying affidavit contained false statements must apply a two-part test: (1) whether the defendant has proven by a preponderance of the evidence that the affidavit contains deliberately or recklessly false statements and (2) whether the affidavit, without the false statements, provides the requisite probable cause to sustain the warrant.

*United States v. Charles,* 138 F.3d 257, 263 (6th Cir.1998).

■ In the present case, the defendant is unable to prevail on either of the two parts of the relevant test. First, the challenged statements in the affidavit have not been shown to be either recklessly or deliberately false. In the affidavit, Harper asserts that a confidential informant purchased crack cocaine from the defendant, while Raymond Dunn, one of Harper's fellow officers, later testified at the defendant's preliminary hearing that he (Dunn) *believed* that Harper had made the undercover buy himself. Clearly, these two statements do not establish that *Harper* was in any way deceitful. The affiant himself never alluded to any other scenario that would contradict his assertion that his confidential informant obtained the illegal drugs from the defendant, albeit with Harper's assistance and seed money. Moreover, even Dunn's statement at the hearing does not cast doubt on Harper's veracity given the inherent qualifications and limitations in a statement of a second officer's "belief" and the ambiguity present in the internal police communication from Harper upon which Dunn formed his "belief." In that memorandum, Harper merely related that he had obtained drugs from the defendant in a controlled buy. Although Harper obviously intended such a statement to convey only the fact that he had been successful in orchestrating a buy from Edmonds, Dunn, not being fully familiar with the details of the operation, apparently took the statement more literally.

The magistrate judge had the opportunity to evaluate Harper's credibility at the suppression hearing and believed his assertion that the statement that he "made the buy" of crack cocaine did not mean that he personally transacted business with the defendant, but that he "used a confidential informant to purchase crack cocaine from Mr. Edmonds at 1215 Poplar Street Court." There is no error in such a conclusion.

Similarly, Harper made no deliberately or recklessly false statements concerning the length of time he had the home at 1215 Poplar Street Court under surveillance. The defendant highlights the fact that the affidavit first notes the affiant's connection with the Poplar Street Court apartment on August 2, 2000, exactly two weeks prior to the execution of the search warrant issued for the premises, when Harper "received information from a confidential informant advising of crack cocaine sales at" the address. That statement, however, in no way contradicts Dunn's preliminary hearing testimony that Harper had the building under surveillance for "approximately a month," or Harper's own trial testimony that he had been observing the residence since before July 2000.

■ Because Edmonds failed to satisfy his initial burden of establishing that the

affiant lied in his application for a search warrant, the magistrate judge and the district judge correctly concluded that suppression of evidence recovered from the 1215 Poplar Street Court address was not constitutionally required. Even had the statements challenged by the defendant been removed from the affiant's application, however, sufficient information would have remained in that affidavit to establish the probable cause necessary to obtain the requested search warrant. Without reference to the length of time Harper had been observing the premises or to the informant's buy of crack cocaine from the defendant on August 14, 2000, the affidavit still stated that the defendant was in possession of the premises and that the informant had observed "a large amount of crack cocaine" in the residence only two days prior to the application. The affidavit also provided that the affiant "has received information from *another* informant about drug sales at ... 1215 Poplar Street Court." (Emphasis added.) The district court thus appropriately denied Edmonds's motion to suppress the evidence collected at the Poplar Street Court residence.

## 2. Failure to Produce Confidential Informant for Cross–Examination

■ Edmonds next contends that his ability to confront his accusers was compromised when the government failed to disclose the identity of the confidential informant who purchased crack cocaine from the defendant on August 14, 2000. The Sixth Amendment to the United States Constitution does guarantee a defendant the right to confront the witnesses against him, but "does not ... require the government to call every witness competent to testify, including special agents or informers." *United States v. Moore*, 954 F.2d 379, 381 (6th Cir.1992).

The Supreme Court, in *Roviaro v. United States*, 353 U.S. 53, 62, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), addressed the issue of when disclosure of confidential informants is compelled by the Constitution. In doing so, the Court required trial judges to:

balanc[e] the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

We have subsequently held that "[a]n informant must be disclosed only upon a showing by the defendant that disclosure is essential to a fair trial." *Moore*, 954 F.2d at 381 (citing *United States v. Hanna*, 341 F.2d 906, 907 (6th Cir.1965)).

The non-disclosure of the confidential informant in this case in no way affected the ability of Edmonds to receive a fair trial on the charges lodged against him. The one-count indictment returned against the defendant charged simply that Edmonds, on or about August 16, 2000, "did knowingly, intentionally and without authority possess with the intent to distribute cocaine base (crack)." The sole evidence of the defendant's guilt of that crime was provided by law enforcement officials who either observed Edmonds in constructive possession of the contraband drugs or who analyzed the substances seized to determine their chemical compositions. No information provided by the confidential informant was relevant to the trial proceedings against Edmonds. Although the informant is alleged to have purchased a rock of crack cocaine from the defendant, Edmonds was neither charged with nor tried for that offense. Because disclosure of the identity of the confidential informant

thus had no bearing whatsoever on the fairness of the defendant's trial, the district judge did not err in refusing to order the revelation of that information.

### 3. Failure to Disclose Certain Information to Defendant

Finally, the defendant contends that the government failed to disclose to him certain information that could have been used to exonerate him or, at least, to impeach prosecution witnesses. Without question, in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the United States Supreme Court imposed upon the government the "obligation to turn over material that is both favorable to the defendant and material to guilt or punishment." *United States v. Bencs,* 28 F.3d 555, 560 (6th Cir.1994). "Moreover, it is well-settled that this disclosure obligation includes evidence that could be used to impeach the credibility of a witness." *Schledwitz v. United States,* 169 F.3d 1003, 1011 (6th Cir.1999) (citing *Giglio v. United States,* 405 U.S. 150, 154–55, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972)). Nevertheless, a *Brady* violation will not result in a new trial for the defendant unless the court concludes that the improperly withheld evidence "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles v. Whitley,* 514 U.S. 419, 435, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).

■ Edmonds contends on appeal that the prosecution did not turn over to him a copy of Harper's report of the August 14 drug buy until after trial, thus limiting his ability to cross-examine Harper effectively. Furthermore, the defendant insists that the United States should have provided him with copies of the police log sheets of Edmonds's alleged drug activities, and that the government should have given him documentation of the destruction of the evidence seized from him. None of these alleged *Brady* violations, however, would entitle Edmonds to the relief he now seeks.

First, despite his protestations on appeal to the contrary, the defendant and his counsel did indeed receive a copy of Harper's report of the August 14, 2000, drug buy in a timely manner. In fact, at the pretrial suppression hearing, Harper was cross-examined by defense counsel about the report and Edmonds's attorney then moved to have that report admitted into evidence as "Defendant's Exhibit No. 1." By the time of trial, therefore, the defendant was clearly aware of the report and its contents.

■ Next, Edmonds complains about the delay on the part of the prosecution in providing the police log sheets to him. Although such a delay might well have been in violation of the court's discovery order, it did not rise to the level of a *Brady* violation for the plain and simple reason that the log was not exculpatory. Rather, that document merely indicated, without elaboration, that Harper recovered "crack cocaine—1 rock—(broken up)" at 4:18 p.m. on August 14, 2000, and that he later recovered $419.00 in United States currency, as well as crack cocaine and marijuana, at 2:11 p.m. on August 16, 2000. This information in no way cast doubt upon the guilt of the defendant or the credibility of any prosecution witness. Like the non-existent documentation of the destruction of the contraband evidence, therefore, these challenged pieces of evidence cannot serve as the basis of a finding of a *Brady* violation in this case.

### *CONCLUSION*

For the reasons set out above, we find no reversible error in connection with the issues raised on appeal, and we therefore

AFFIRM the judgment of the district court in all respects.