NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0112n.06

No. 09-5851

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Feb 15, 2011
LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

TIMMY SCOTT HAMMONS,

    Defendant-Appellant.

_____ /

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY

BEFORE:    DAUGHTREY, CLAY, and WHITE, Circuit Judges.

**CLAY, Circuit Judge.**    Defendant Timmy Scott Hammons, who was sentenced to concurrent terms of 60 months of incarceration after entering a conditional plea of guilty to one count of conspiracy to distribute 100 kilograms or more of marijuana, in violation of 21 U.S.C. § 846, and one count of possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c), appeals the district court's order denying his motion to suppress evidence and to suppress statements obtained during a search of his home, and withholding the name of the informant upon whose testimony the search warrant was based.

For the reasons set forth below, we **AFFIRM** the judgment of the district court.

**BACKGROUND**

On September 11, 2008, Defendant Timmy Scott Hammons was arrested in London, Kentucky, along with his wife, Mary Ruth Hammons, and his neighbor, Anthony Ray Bowling, on marijuana trafficking and firearms possession charges. Defendant's arrest followed the execution of a search warrant at his residence which uncovered two large bundles of marijuana, three firearms, a drug ledger, and additional marijuana on the persons of Mary Ruth Hammons and Anthony Ray Bowling. In total, fifty-eight pounds, or approximately 26.3 kilograms of marijuana were recovered from Defendant's home.

The search warrant was based on the affidavit of Detective Brad Mitchell, a 13-year veteran of the Laurel County Sheriff's Department. In the affidavit, Detective Mitchell relayed the statements of an informant who spoke to authorities after being arrested on the morning of September 11, 2008 on unrelated drug charges. The informant identified Defendant as a drug dealer, and stated that he purchased 12 to 15 pounds of marijuana from Defendant over a 3 to 4 month period at a price of $1200 per pound, and received marijuana at Defendant's residence on one or more occasions.

Following his arrest, the informant led authorities to an address later confirmed to be Defendant's residence by officers who verified the registration of cars parked in the driveway. In the presence of authorities, the informant also telephoned an individual alleged to be Defendant, who stated that he was "loaded heavy" with "good stuff," that he was willing to meet later, and that he had "something that was a lot better," suggesting an ongoing buyer/seller relationship.

Based on the aforementioned, authorities applied for and successfully obtained a search warrant for Defendant's residence. The informant was identified by name in the affidavit presented to the magistrate, but his name was subsequently redacted. The redacted affidavit read as follows:

> On the 11th day of September, 2008, at approximately 8:30 a.m./p.m. affiant received information from/observed: _____ who advised that in the past 3 or 4 months he has purchased 12 to 15 lbs of marijuana from Scott Hammons who resides at the residence referenced in this affidavit. _____ further stated that he purchased the marijuana a (sic) 1 lb. quantities for which _____ paid $1200 U.S. Currency. _____ also advised that he met Hammons at the residence mentioned in this affidavit on at least one occasion and received marijuana. _____ also advised that Hammons fronted the marijuana to _____ and allowed _____ to pay for the marijuana when he received the next pound. _____ advised that it had been approximately 2 weeks since he last purchased marijuana from Hammons. _____ also advised that he usually contacted Hammons via telephone and that he and Hammons would arrange a meet and time. _____ accompanied law enforcement and showed your affiant the residence referred in this affidavit stating that it was the Hammons residence.
>
> On the morning of 09-11-2008 the Laurel County Sheriff's Office executed a search warrant at the _____ residence. During that search approximately 1/2 pound of marijuana was recovered. _____ advised that this was the remainder of the most recent purchase made from Hammons.
>
> Acting on the information received, affiant conducted the following independent investigation: Your affiant secured the cooperation of _____ to place a controlled call to Hammons in the presence of law enforcement. _____ called Hammons at XXX-XXX-XXXX, the number _____ advised belonged to Hammons. _____ inquired with Hammons if _____ could meet Hammons later this date and Hammons advised that he could. Hammons also told _____ that Hammons had something that was a lot better. On a second call, also on in the presence of law enforcement, Hammons told _____ that "we" are loaded heavy and that it was "good stuff." Law Enforcement established surveillance on the residence mentioned in this affidavit and ran computer checks on registration checks on vehicles in the driveway and other computer databases. The vehicles are registered to Timmy Scott Hammons at XXXX XXXXX, London.[1]

(Search Warrant Aff. at 2).

---

[1] Defendant's home address and telephone have been redacted.

During the search of Defendant's home, the Laurel County Sheriff's Department seized contraband and firearms, and obtained a statement from Defendant's wife, Mary Ruth Hammons, describing Defendant's involvement in drug trafficking. After being advised of his *Miranda* rights, Defendant also confessed to selling marijuana, identified his source, and provided information regarding the quantity of marijuana he ordinarily purchased.

On September 24, 2008, following a probable cause hearing, Defendant was indicted on one count of conspiracy to distribute 100 kilograms or more of marijuana, in violation of 21 U.S.C. § 846; one count of aiding and abetting the knowing possession with intent to distribute less than 50 kilograms of marijuana, in violation of 21 U.S.C. § 841(a)(1); one count of possessing firearms in furtherance of drug trafficking crimes, in violation of 18 U.S.C. § 924(c)(1)(A)(i); and one count of criminal forfeiture, under 18 U.S.C. § 924(d)(1).

In October 2008, Defendant pleaded not guilty and filed a motion to suppress his confession and the evidence seized from his home pursuant to the Fourth Amendment exclusionary rule. Defendant also sought the identity of the informant whose name had been redacted from court documents. These motions were referred to a magistrate judge for a report and recommendation. At a November 4, 2008 suppression hearing before the magistrate judge, Defendant argued that the search of his home was unconstitutional because the search warrant was not supported by probable cause, and petitioned for the name of the informant. The magistrate judge recommended that Defendant's motions be denied, and the district court adopted this recommendation over Defendant's objection on February 10, 2009.

Following the denial of his motion to suppress, Defendant moved to change his plea to a conditional plea of guilty for all but the aiding and abetting charges. On July 21, 2009, Defendant was sentenced to two concurrent terms of 60 months of incarceration, forfeiture of his firearms, and 60 months of supervised release. Pursuant to the plea agreement, and consistent with Fed. R. Crim. P. 11(a)(2), Defendant explicitly retained the right to appeal the district court's suppression ruling and its decision to withhold the identity of the informant. Defendant now appeals.

## DISCUSSION

### I. Defendant's Motion to Suppress

#### A. Standard of Review

Whether a search warrant affidavit establishes probable cause to conduct a search is a legal question that this Court reviews *de novo*. *See United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010). When reviewing the denial of a motion to suppress, we view evidence in the light most favorable to the government. *See United States v. Long*, 464 F.3d 569, 572 (6th Cir. 2006). Our duty is simply to ensure that the magistrate had a "substantial basis for finding that the affidavit established probable cause." *United States v. Woosley*, 361 F.3d 924, 926 (6th Cir. 2004).

#### B. Analysis

Defendant alleges that the search warrant affidavit failed to establish probable cause that evidence of criminal activity would be found in his home. In reviewing Defendant's claim, we are guided by the principle that "[s]earch warrant affidavits are to be judged on the totality of the circumstances, not line-by-line scrutiny." *United States v. Thomas*, 605 F.3d 300, 307 (6th Cir. 2010) (citing *Illinois v. Gates*, 462 U.S. 213, 239 (1983)).

**1.      The basis for the magistrate's probable cause determination**

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. In determining whether there is probable cause to conduct a search, a magistrate issuing a search warrant must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found *in a particular place*." *United States v. Gunter*, 551 F.3d 472, 479 (6th Cir. 2009) (citing *Gates*, 462 U.S. at 238–39) (emphasis added). "There must, in other words, be a nexus between the place to be searched and the evidence sought." *United States v. Gardiner*, 463 F.3d 445, 470 (6th Cir. 2006) (internal citations omitted).

While warrants may issue on the basis of hearsay statements, the source of information is highly relevant to the probable cause determination. *See Gunter*, 551 F.3d at 479. As this Court has held, the statements of a known informant can be sufficient to establish probable cause when an affidavit contains facts that permit an "independent judicial determination that the informant is reliable." *United States v. McCraven*, 401 F.3d 693, 697 (6th Cir. 2005); *see also United States v. Allen*, 211 F.3d 970, 975–76 (6th Cir. 2000) (en banc) (requiring that officers attest to the informant's reliability "with some detail"). However, where the testimony of an informant is relied upon without indicia of reliability, "courts insist that the affidavit contain substantial independent police corroboration." *United States v. Frazier*, 423 F.3d 526, 532 (6th Cir. 2005).

The informant here, while unknown to Defendant, was a "known informant" because his name was provided to the magistrate. *See United States v. Jackson*, 470 F.3d 299, 301 (6th Cir. 2006). However, the only information that spoke to the informant's reliability in the Laurel County affidavit was the informant's incriminating statement that Defendant was his marijuana source. While penal statements can be probative of an informant's reliability, this Court has not found them to be dispositive. *See United States v. Higgins*, 557 F.3d 381, 390 (6th Cir. 2009) (citing *Armour v. Salisbury*, 492 F.2d 1032, 1035 (6th Cir. 1974)). In contrast, where, as here, "the informant gave his statements after the police discovered a large amount of drugs in his [possession], giving him an incentive to cooperate with the police to help himself," penal statements do not establish reliability. *Id.* Therefore, the informant's statements are insufficient to establish probable cause. *Cf. United States v. Hammond*, 351 F.3d 765, 772 (6th Cir. 2003).

This does not end our inquiry, however. "[A]n affidavit that supplies little information concerning an informant's reliability may support a finding of probable cause, under the totality of the circumstances, if it includes sufficient corroborating information." *Woosley*, 361 F.3d at 927. Reviewing the affidavit under the totality of the circumstances, we find that adequate independent corroboration was provided here. The Sheriff's Department initially asked the informant to locate Defendant's residence, and then independently verified the address. While these investigations only confirmed the informant's knowledge of "the innocent fact that [Defendant] lived at the stated location," *Higgins*, 557 F.3d at 390, authorities further corroborated the informant's story by having him telephone Defendant and discuss a narcotics purchase. These calls, made in the presence of

7

authorities, captured a speaker identified as Defendant stating that he was "loaded heavy" and "had good stuff," and agreeing to meet at a later time.

Defendant argues that the Sheriff's Department could have performed a more comprehensive investigation. Perhaps so,[2] however, our review of the affidavit is constrained to "judg[ing] the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." *Thomas*, 605 F.3d at 309 (citing *Allen*, 211 F.3d at 975). While the affidavit did not speak to the reliability of the informant, it provided independent corroboration in the form of phone calls to Defendant in the authorities' presence, where Defendant spoke both to the quantity and quality of marijuana in his possession. On these facts, we cannot say that the magistrate lacked a substantial basis for finding probable cause.

## 2. The nexus between drug activity and Defendant's residence

Affidavits supporting a search warrant also have to establish a nexus between the place to be searched and probable evidence of criminal activity, not just that "the owner of property is suspected of crime." *United States v. McPhearson*, 469 F.3d 518, 524 (6th Cir. 2006) (citing *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978)); *see also United States v. Carpenter*, 360 F.3d 591, 594–95 (6th Cir. 2004) (en banc). Defendant argues that even when the informant's statements

---

[2] For instance, due to an equipment malfunction, authorities were unable to record parts of the informant's phone conversations and instead only overheard them. Authorities also failed to supplement the phone calls with extended surveillance of Defendant or a controlled narcotics buy—measures which traditionally offer corroboration of an informant's story. *See, e.g.*, *United States v. Gunter*, 266 F. App'x 415, 417 (6th Cir. 2008) ( "independent corroboration may be established . . . by a police monitored, controlled purchase"); *Jackson*, 470 F.3d at 308–09 (informant testimony deemed credible when officials monitored a controlled buy); *United States v. Coffee*, 434 F.3d 887, 894–95 (6th Cir. 2006) (same); *United States v. Pinson*, 321 F.3d 558, 563 (6th Cir. 2003) (same).

are credited, the affidavit fails to establish the requisite nexus between criminal activity and Defendant's home. We disagree.

The affidavit stated that Defendant sold the informant 12 to 15 pounds of marijuana over a three to four month period, and that the informant purchased marijuana at Defendant's home on one or more occasions. Although this information may raise issues of staleness,[3] it clearly linked Defendant's drug trafficking activities to his home and established a fair probability that evidence would be found there. Therefore, the affidavit satisfied the nexus requirement. This conclusion is bolstered by our precedents establishing that a "magistrate may infer a nexus between a suspect and his residence, depending upon the type of crime being investigated, the nature of things to be seized, the extent of an opportunity to conceal the evidence elsewhere and the normal inferences that may be drawn as to likely hiding places." *United States v. Williams*, 544 F.3d 683, 687 (6th Cir. 2008) (internal citations and quotation marks omitted); *see also Gunter*, 551 F.3d at 478; *United States v. Gunter*, 266 F. App'x 415, 418–19 (6th Cir. 2008); *United States v. Miggins*, 302 F.3d 384, 393 (6th Cir. 2002); *United States v. Jones*, 159 F.3d 969, 974–75 (6th Cir. 1998) ("[I]n the case of drug dealers, evidence is likely to be found where the drug dealers live") (internal citations omitted).

Reviewing the search warrant affidavit for the totality of the circumstances, we conclude that the district court did not err in denying Defendant's motion to suppress because the magistrate had

---

[3] Defendant failed to brief the issue of whether information supporting the search warrant was stale. *United States v. Frechette*, 583 F.3d 374, 377–78 (6th Cir. 2009) (discussing staleness). Therefore, we deem it waived. *See United States v. Williams*, 544 F.3d 683, 690 (6th Cir. 2008); *see also Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 311 (6th Cir. 2005) ("[Plaintiff's] failure to raise an argument in his appellate brief constitutes a waiver of the argument on appeal.").

a substantial basis for concluding that evidence of criminal activity would be found at Defendant's home.

## II. The Decision to Withhold the Name of the Informant

### A. Standard of Review

This Court reviews a district court's denial of a motion to disclose the identity of an informant for abuse of discretion. *United States v. Jenkins*, 4 F.3d 1338, 1341 (6th Cir. 1993). "A court abuses its discretion when it commits a clear error of judgment, such as applying the incorrect legal standard, misapplying the correct legal standard, or relying upon clearly erroneous findings of fact." *Jones v. Ill. Cent. R.R. Co.*, 617 F.3d 843, 850 (6th Cir. 2010) (internal citation omitted).

### B. Analysis

Although the government is privileged to withhold the identity of police informants, "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Roviaro v. United States*, 353 U.S. 53, 61 (1957). "Mere conjecture or supposition about the possible relevancy of the informant's testimony is insufficient to warrant disclosure." *United States v. Sharp*, 778 F.2d 1182, 1187 (6th Cir. 1985) (internal citations omitted). Instead, a defendant bears the burden of showing how disclosure of an informant's identity will materially aid his defense. *See United States v. Moore*, 954 F.2d 379, 381 (6th Cir. 1992).

Defendant argues that he should be provided the identity of his informant because the informant did not request anonymity, has no history of assisting authorities, and therefore is not the kind of informant contemplated by *Roviaro*. This argument is contradicted by *Roviaro* itself, which

notes, "[w]hat is usually referred to as the informer's privilege *is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law*." 353 U.S. at 59 (emphasis added). Because the privilege against disclosure belongs to the government, not the informant, and requires no showing of a special relationship, the government cannot be compelled to reveal the identity of the informant unless Defendant makes a preliminary showing as to why this information is "essential to a fair trial." *Moore*, 954 F.2d at 381.

Defendant has failed to make this showing. Without questioning the truthfulness of the informant's statements, Defendant states that learning the informant's identity can help him identify whether the Sheriff's affidavit exaggerated or omitted information, and whether a hearing regarding falsified information would be appropriate under *Franks v. Delaware*, 438 U.S. 154 (1978). *See Gunter*, 551 F.3d at 481 (explaining *Franks* hearings). These statements are inadequate to compel disclosure of the informant's identity, and they fail to establish Defendant's entitlement to a *Franks* hearing, which requires a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." *Franks*, 438 U.S. at 155–56; *see also United States v. Chapman*, 112 F. App'x 469, 475 (6th Cir. 2004) (stating that *Franks* hearings are not proper where defendant "merely asks for permission to begin a fishing expedition.").

Since Defendant is unable to make the required showing that the identity of the informant is essential to a fair trial, we hold that the district court did not abuse its discretion in denying Defendant's motion.

11

**CONCLUSION**

Because we find that the magistrate had a substantial basis for its probable cause determination, and because Defendant has failed to demonstrate that disclosure of the informant's identity is necessary for fairness, we **AFFIRM** the judgment of the district court.