**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 05a0632n.06**
**Filed: July 28, 2005**

No. 03-6602

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| v. | ) | EASTERN DISTRICT OF TENNESSEE |
| | ) | |
| BOLIVAR DEXTA, | ) | OPINION |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Before: COLE and GILMAN, Circuit Judges; and POLSTER, District Judge.[*]

**POLSTER, District Judge.** Defendant-Appellant Bolivar Dexta ("Dexta") appeals his conviction and sentence for conspiracy to distribute, possession with intent to distribute, and attempt to distribute in excess of fifty grams of a mixture and substance containing methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 846, and 18 U.S.C. § 2. Dexta raises three issues on appeal. First, he argues that the district court erred when it denied his motion to disclose the identities of the government's confidential informants. Second, he argues that the district court erred when it allowed the government to cross-examine defense witnesses regarding the criminal activity of two alleged co-conspirators who were neither named in the indictment nor witnesses in the instant case. Third, Dexta argues that the sentence imposed by the district court violates the Sixth

---

[*]The Honorable Dan Aaron Polster, United States District Judge for the Northern District of Ohio, sitting by designation.

Amendment because it is based on facts neither admitted by Dexta nor found by a jury beyond a reasonable doubt. For the reasons stated below, we **AFFIRM** Dexta's conviction, but **VACATE** Dexta's sentence and **REMAND** for re-sentencing consistent with the U.S. Supreme Court's decision in *United States v. Booker*, 543 U.S. ___, 125 S. Ct. 738 (2005).

## I. BACKGROUND

On August 13, 2002, a grand jury issued a three-count indictment, charging Dexta and Paul Bailes ("Bailes") with conspiracy to distribute, possession with intent to distribute, and attempt to distribute in excess of fifty grams of a mixture and substance containing methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 846, and 18 U.S.C. § 2.[1]

### A.      Motion for disclosure

In October 2002, Dexta filed a motion to disclose the identities of the government's two confidential informants. Dexta requested disclosure on the grounds that the informants had exculpatory information that was both relevant to whether Dexta was Bailes's boss and essential to a fair determination of the issues. Dexta alleged that both informants were direct participants in Bailes's drug transactions, were familiar with Bailes's methamphetamine ring, and never saw Dexta as part of this ring. Dexta stated that one of the informants advised law enforcement agents that Bailes was selling methamphetamine from his residence, and the other advised an agent that he saw about one ounce of methamphetamine inside Bailes's residence.

In November 2002, a suppression hearing was held before a U.S. Magistrate Judge. During the hearing, defense counsel requested disclosure of the informants' identities under *Roviaro v. United States*, 353 U.S. 53 (1957), and *Giglio v. United States*, 405 U.S. 150 (1972). Specifically,

---

[1]Count I of the indictment charged Dexta and Bailes with conspiracy to distribute methamphetamine in or about July, 2002. The offenses charged in Counts II and III occurred on or about July 18, 2002.

2

defense counsel argued that disclosure would be relevant and helpful to Dexta's defense because disclosure would enable the defense to speak with the informants which *may* lead to evidence exculpating Dexta. During the hearing, counsel for the parties revealed that one of the confidential informants had passed away. Also, the government informed the Magistrate Judge that it would not be relying on the testimony of the living informant at trial. Defense counsel requested disclosure of the deceased informant's identity, arguing that Dexta's right to prepare his defense outweighed the public interest in protecting the flow of information under the balancing test set forth in *Roviaro*. The government responded that disclosure of the deceased informant's identity would reveal the identity of the living informant, and requested an *in camera* hearing to present its argument. The government's motion was granted and the *in camera* hearing was held immediately after the suppression hearing.

In December 2002, the Magistrate Judge issued a Report and Recommendation denying Dexta's motion on the grounds that Dexta did not satisfy his burden of showing that disclosure would substantively assist his defense.[2] The Magistrate Judge found that the argument that the informants might provide exculpatory evidence about Dexta because they had absolutely no information implicating him was "highly speculative." In fact, the Magistrate Judge found that it was not unusual that the informants, who were acquainted only with Bailes, did not provide law enforcement with any evidence implicating Dexta (who was allegedly Bailes's supplier) because "most drug dealers will not introduce their source of supply to their customers for fear of being 'cut out of the loop.'"

_____

[2]In the Report and Recommendation, the Magistrate Judge also denied Dexta's motion to suppress and motion for appointment of an expert. The district court's resolution of these motions is not challenged on appeal.

3

The Magistrate Judge also stated that he had considered the arguments for non-disclosure of the identity of the deceased informant advanced by the government during the *in camera* hearing, and found them to be persuasive. Accordingly, he recommended that the motion to disclose the identities of the confidential informants be denied.

Dexta filed an objection to the Report and Recommendation in which he challenged three of the Magistrate Judge's findings. First, Dexta argued that the Magistrate Judge improperly weighed the interests of the public, the confidential informant, and the defendant under the balancing test set forth in *Roviaro v. United States*, 353 U.S. 53 (1957). In Dexta's view, because one of the informants had passed away, his identity no longer required protection. Dexta also argued that the testimony of the living informant, who had detailed information regarding Bailes's methamphetamine transactions but no evidence whatsoever linking Dexta to those transactions, would undermine Bailes's credibility if Bailes testified that Dexta was his source of methamphetamine in July 2002. Second, Dexta argued that the Magistrate Judge incorrectly concluded that Dexta failed to show how disclosure of the identities of the confidential informants would substantially assist his defense. Third, Dexta argued that even if he failed to satisfy the substantial assistance test, that requirement violates the rule set forth in *Brady v. Maryland,* 373 U.S. 83 (1963), which places the burden of disclosing exculpatory information on the government.

In February 2003, the district court adopted the Magistrate Judge's Report and Recommendation denying Dexta's motion. Specifically, the district court concluded that one of the informants would no longer be able to testify that he did not see Dexta transacting methamphetamine with Bailes because that informant had passed away. As for the living informant, the district court held that the theory that a jury would interpret the informant's lack of familiarity with Dexta as

4

evidence that Dexta did not sell methamphetamine to Bailes was "pure speculation," and insufficient to warrant disclosure. The district court also held that the government was not required to disclose the identities of the informants under *Brady* because the informants' knowledge, or lack thereof, was not material to Dexta's guilt. Accordingly, the district court concluded that Dexta failed to demonstrate how disclosure of the informants' identities would substantially assist his defense.

### B. Trial Testimony

On March 17, 2003, the matter proceeded to jury trial. On the first day of trial, Paul Bailes testified as a government witness. Bailes stated that he pled guilty, pursuant to a plea agreement, to conspiracy to distribute methamphetamine. Bailes testified that he obtained methamphetamine from Dexta six or seven times, beginning in June 2002, and that an individual by the name of Carlos was present during one of his last methamphetamine transactions with Dexta. Bailes stated that he believed Carlos was Dexta's source of methamphetamine; when asked why he believed this was true, Bailes testified that Dexta said so himself. Bailes also testified that the one pound of methamphetamine that was seized from him on the day of his arrest was obtained from Dexta.

The government also called Phillip Narramore, a detective in the Chattanooga Police Department. Narramore testified to the following facts: On July 17, 2002, Narramore was contacted by two informants who advised him that Bailes was selling large amounts of methamphetamine. On the following day, Narramore and other officers set up a drug buy between Bailes and one of the informants. Narramore instructed the informant to set up the transaction at a particular motel. After the informant contacted Bailes, Bailes arrived in a black Chevrolet truck, placed a pound of methamphetamine underneath his shirt, and went to the informant's room. The informant met Bailes at the door and told him they would have to go down the road to get the money from the person who

5

wanted to buy the drugs. At this time, several officers attempted to stop Bailes. Bailes fled the scene, discarding the bag of methamphetamine. One of the officers immediately stopped and picked up the bag while another officer apprehended Bailes. After being placed under arrest, Bailes agreed to cooperate and informed Narramore that Dexta was his source of methamphetamine. During the questioning, Bailes's cell phone rang; Bailes said it was Dexta "calling about his money." At that point, Narramore and other officers proceeded to Bailes's residence to execute a search warrant. Dexta and Jimmy Johnson, Bailes's cousin, were found inside the residence. Dexta was placed under arrest, *Mirandized* and interviewed.

Narramore testified that at the time of his arrest, Dexta had a cell phone. Before turning the phone over to property, Narramore downloaded all the phone numbers found inside the phone. The call records indicated that in late June and in July of 2002, Dexta often made calls to Bailes shortly before or after he called an individual listed in his cell phone address book as Carlos. After Dexta's arrest, Narramore searched Dexta's residence where he found some paperwork that had the name Carlos Cotto.

On the second day of trial, the defense called Yamaris Santiago to the witness stand. Santiago testified that she had known Dexta for seven years and lived with the Dexta family from March to July 2002, during which time she never saw Bailes in or around the house. On cross-examination, Santiago testified that she knew Carlos Cotto, that Dexta knew Cotto, and that she had seen Cotto at Dexta's home on a few occasions during the time she lived there.

The defense also called Dexta's wife, Ana Dexta, to the witness stand. During direct examination, Ana Dexta testified that she and her husband drove to Bailes's home in June or July

6

of 2002 because her husband was interested in purchasing a motorcycle from Bailes.  After arriving at Bailes's home, Dexta test-drove the motorcycle and purchased it on the same day.

On cross-examination, Ana Dexta testified that she knew Carlos Cotto and his wife Karen Santos Torres.  Soon after, the following colloquy took place:

By Mr. Piper [Prosecutor]:    . . . .

Q.      Okay.  You know Karen Santos Torres sells dope, don't you, sells methamphetamine, crystal methamphetamine?

Mr. Hoss [Defense counsel]:  Judge, I object to that question.  There is no foundation, no evidence whatsoever, regarding that allegation before this jury.

The Court:      Mr. Piper, I believe that the objection is that you do not have a good faith basis for asking the question.

Mr. Piper:      Well, I have an excellent faith basis, since she has been arrested with 2 pounds of methamphetamine.

Mr. Hoss:       I object, Your Honor.  I object.  I object.  That is irrelevant, irrelevant, and should not be -- and it's improper for him to make those statements right now.

The Court:      Did I misunderstand the objection, that it's based upon the prosecutor's not having a good faith basis for the objection?

Mr. Hoss:       Judge, there is no foundation laid.  It is irrelevant.  And under 403 it is unfairly prejudicial.  It is misleading.  It confuses every single issue in this case.  That's the basis of the objection, Your Honor.

The Court:      Based upon Mr. Piper's statement that he does have a good faith basis for the question, the Court will allow it.

The Witness:  Okay.

By Mr. Piper:

Q.      Mrs. Dexta --

A.      Uh-huh.

7

Q.    -- you know that Karen Santos Torres sells methamphetamine, don't you?

A.    No.

Q.    You've never heard that before even?

A.    (Shaking head from side to side.) I don't -- I don't get myself mixed up in other people's problems. I let them live their lives.

Q.    Okay. Do you know Carlos Cotto sells methamphetamine?

Mr. Hoss:    Objection, Your Honor. Same basis. It is irrelevant under 403. It is misleading to the jury. There is no foundation.

Mr. Court:    Mr. Piper, is your position the same?

Mr. Piper:    Yes, Your Honor.

The Court:    Objection is overruled.

By Mr. Piper:

Q.    Ma'am, you know that Carlos Cotto sells methamphetamine, don't you?

A.    No.

Q.    You know he's been arrested for methamphetamine?

Mr. Hoss:    Objection, Your Honor. Asked and answered. This is irrelevant under 403, Your Honor. It is unfairly prejudicial. There is no probative value whatsoever. This is that red herring he's throwing up there.

The Court:    Mr. Piper?

Mr. Piper:    Judge, for one thing, it goes to her bias.

Mr. Hoss:    She has denied any knowledge of it, Judge. How can she be biased about something she doesn't know?

Mr. Piper:    Well, she said her husband doesn't sell methamphetamine, she doesn't know anything about it. These are people she knows.

8

The Court:     Overruled.

. . . .

By Mr. Piper:

Q.     Ma'am, do you know that Carlos Cotto has been arrested with 2 pounds of methamphetamine?

A.     Carlos? Because I know Karen's mom. She works with me; Marion. And Karen's sister also works with me.

Q.     My question to you is, Mrs. Dexta, you know that Carlos Cotto has been arrested with 2 pounds of methamphetamine?

A.     Yes, I know, because the family told me that the son is in prison.

Q.     He was arrested after your husband, wasn't he?

A.     Yes.

Q.     About a month after?

A.     Yes.

The defense also called Christopher Montalvo, a friend of Dexta. Montalvo testified that he knew Carlos Cotto, who had been to his house on one or two occasions, and had seen Karen Santos Torres. During cross-examination, the government asked Montalvo whether he knew that Carlos Cotto and Karen Santos Torres had been arrested, and Montalvo testified that he had heard about it. When asked if he knew the reason for the arrest, Montalvo replied that he heard it was for drugs. Montalvo then testified that he did not know what kind of drugs were involved. Defense counsel did not make any objections during cross-examination.

On the following day, defense counsel moved for a mistrial on the grounds that the government improperly questioned defense witnesses about the arrests of Carlos Cotto and Karen Santos Torres. Defense counsel stated that at the time the evidence was introduced, Cotto and

9

Santos Torres were only indicted for possession of methamphetamine with intent to distribute; they did not plead guilty, have never been on trial, and were involved in a different crime that occurred on a different date and involved different evidence. Defense counsel argued that the information regarding these arrests was confusing and misleading to the jury, and that any probative value was outweighed by unfair prejudice. Specifically, defense counsel argued that this information caused unfair prejudice because the jury would be led to believe that Cotto (because he was charged with a crime) could be just as guilty as Dexta. Also, defense counsel indicated that the testimony of one of the witnesses (presumably Ana Dexta) acknowledging that she knew about Cotto's arrest caused unfair prejudice because the jury would not be able to look at Dexta impartially and base its decision strictly on the evidence and the law.

The district court summarized its recollection of the colloquy from the previous day. The district court indicated that when defense counsel first objected to the government's question (presumably, the question to Ana Dexta concerning whether she knew Santos Torres sold methamphetamine), the court believed defense counsel was alleging that the government did not have a good faith basis for the question. The district court stated that it subsequently asked the government whether it had a good faith basis for the question, at which time the government indicated that there was a formal charge against Carlos Cotto or Karen Santos Torres (the district court could not recall whom the charge was against). The district court stated that defense counsel vehemently objected to the government's pronouncement about the charge on the grounds that it was irrelevant. The district court concluded its summary by stating that in its recollection, the government then indicated that it intended to show the witness's bias.

10

After recounting this colloquy, the district court asked defense counsel if the court correctly understood the issue that was raised the previous day, and defense counsel stated that he had also objected to the question under Federal Rule of Evidence 403 and had argued that the question was misleading and confusing. Defense counsel stated that he was not offering any new evidentiary grounds for his objection. The district court stated that it had informed the jury at the outset that questions by counsel are not evidence, and that it would repeat this charge in its final instructions. After hearing argument by both sides, the district court adhered to its earlier decision allowing the government's question and denied the motion for a mistrial.

**C.     Sentencing**

Dexta was found guilty on all three counts of the indictment. On November 7, 2003, the district court held a sentencing hearing at which time defense counsel raised two objections to the presentence report (which were also filed with the district court prior to the hearing). Specifically, defense counsel objected to (1) the drug amount attributed to Dexta in the presentence report and (2) the probation officer's two-point enhancement for obstruction of justice. At the sentencing hearing, Dexta requested that the district court sentence him at a base offense level of 30, Criminal History Category I (97-121 months).

The presentence report held Dexta accountable for at least 500 grams but less than 1.5 kilograms of methamphetamine, placing Dexta at a base offense level of 32. *See* U.S. Sentencing Guidelines § 2D1.1(c)(4). Specifically, the presentence report attributed two pounds of methamphetamine (907.2 grams) to Dexta, including the one pound seized on the date of Dexta's and Bailes's arrest (which weighed less than 500 grams) and the one pound Dexta allegedly supplied to Bailes during the course of the conspiracy. Dexta argued that the latter amount should not be used

11

to calculate his sentence. Specifically, Dexta alleged that this amount was attributed to him on the basis of Bailes's uncorroborated and unreliable trial testimony, that Bailes was guessing the amount of drugs involved in each transaction, and that Bailes's testimony was insufficient to hold Dexta accountable for at least 500 grams of methamphetamine.[3] Accordingly, Dexta requested that the district court hold him accountable only for the pound of methamphetamine seized on the date of his arrest, and not for the additional pound of methamphetamine that the government claimed Dexta supplied to Bailes during the course of the conspiracy, placing him at a base offense level of 30, Criminal History Category I (97 to 121 months). *See* U.S. Sentencing Guidelines § 2D1.1(c)(5) (at least 350 grams but less than 500 grams of methamphetamine). In response, the government alleged that there was overwhelming evidence that Dexta transacted over 500 grams of methamphetamine. The government argued that Bailes's testimony was corroborated by other witness testimony and by Dexta's cell phone records showing numerous calls between Dexta and Bailes.

Dexta also objected to the probation officer's two-point enhancement for obstruction of justice under U.S. Sentencing Guidelines § 3C1.1. The presentence report adjusted Dexta's base offense level on the grounds that Dexta committed perjury when he testified that he never sold methamphetamine to Bailes. Dexta argued that he did not commit perjury, and that the application of an enhancement for obstruction of justice in this context would have a chilling effect on a defendant's constitutional right to testify in his own defense. In response, the government argued that under *United States v. Dunnigan*, 507 U.S. 87 (1993), an enhancement for obstruction of justice

---

[3]Specifically, Bailes testified at trial that he purchased three ounces of methamphetamine from Dexta in June 2002; three ounces in the parking lot of a Bennigan's; one ounce in exchange for a motorcycle; and eight ounces during a transaction in Collegedale. When asked how much methamphetamine he obtained during the Bennigan's transaction, Bailes testified: "I think it was 3 ounces on that occasion . . . ." As for the motorcycle transaction, Bailes stated: "I think it was an ounce of meth . . . ."

12

on the grounds that the defendant committed perjury at trial does not violate the defendant's constitutional right to testify.

After hearing argument by both sides, the district court denied Dexta's objections. With respect to the drug quantity, the district court stated as follows: "Based upon the evidence that was testified to at trial, the district court believes that the quantities specified in the presentence report are very conservative and more than borne out by the evidence." As for the obstruction of justice enhancement, the district court made a specific finding that Dexta provided false testimony regarding his involvement in the charged offenses.

Dexta was sentenced to 151 months' imprisonment, the low end of the Guidelines range for offense level 34, Criminal History Category I (151 to 188 months). On November 10, 2003, Dexta filed a timely Notice of Appeal.

## II. ANALYSIS

### A.    Motion to disclose informants' identities.

We review the district court's decision to deny a motion to disclose the identity of a confidential informant for abuse of discretion. *United States v. Moore*, 954 F.2d 379, 381 (6th Cir. 1992). "A district court abuses its discretion when it applies the incorrect legal standard, misapplies the correct legal standard, or relies upon clearly erroneous findings of fact." *United States v. Pugh*, 405 F.3d 390, 397 (6th Cir. 2005) (citing *Schenck v. City of Hudson,* 114 F.3d 590, 593 (6th Cir. 1997)). Accordingly, we will reverse the district court's decision only if we are firmly convinced that a mistake has been made. *Id.* (citing *United States v. Kingsley,* 241 F.3d 828, 835 n.12 (6th Cir. 2001)).

Dexta argues that the district court erred when it adopted the Magistrate Judge's Report and Recommendation denying the motion to disclose the identities of the confidential informants, and prevented Dexta from receiving a fair trial. Specifically, Dexta claims that he demonstrated that disclosure was relevant and helpful to his defense under the standard set forth in *Roviaro v. United States*, 353 U.S. 53 (1957). Dexta asserts that the confidential informants participated in, witnessed, and obtained detailed information about Bailes's conspiracy in July 2002. Dexta also argues that the informants had been to Bailes's residence where Bailes conducted drug transactions, and could assist the defense in cross-examining and impeaching Bailes, a two-time convicted felon.

The government enjoys the privilege of withholding the identities of persons who provide information concerning violations of the law. *United States v. Johnson*, Nos. 00-5195, 00-5277, 2002 WL 818229, at *4 (6th Cir. Apr. 29, 2002) (citing *Roviaro*, 353 U.S. at 59). The defendant bears the burden of showing how disclosure of the informant's identity would substantively assist his defense. *Moore*, 954 F.2d at 381. "Mere conjecture or supposition about the possible relevancy of the informant's testimony is insufficient to warrant disclosure." *United States v. Sharp*, 778 F.2d 1182, 1187 (6th Cir. 1985), *cert. denied*, 475 U.S. 1030 (1986) (citation omitted). "An informant must be disclosed only upon a showing by the defendant that disclosure is essential to a fair trial." *Moore*, 954 F.2d at 381 (citation omitted).

The decision of whether to require disclosure of the identity of a confidential informant is generally left to the discretion of the trial court. *United States v. Cummins*, 912 F.2d 98, 103 (6th Cir. 1990) (citing *United States v. Raddatz,* 100 S. Ct. 2406, 2414-15 (1980)). The U.S. Supreme Court has cautioned against applying any fixed rule with respect to disclosure. *Moore*, 954 F.2d at 381 (citing *Roviaro*, 353 U.S. 53). Rather, in making its determination, the district court must

14

balance the public interest in protecting the flow of information to the government against the defendant's need for the disclosure of information in preparing his defense. *United States v. Elguezabal*, No. 97-5643, 1999 WL 717978, at *2 (6th Cir. Sept. 9, 1999). "Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Moore*, 954 F.2d at 381 (quoting *Roviaro*, 353 U.S. at 62).

Disclosure has usually been required where the informant was an active participant in the events underlying the defendant's potential criminal liability. *Sharp*, 778 F.3d at 1186 n.2. Disclosure has usually been denied where the informant was not a participant, but a mere tipster or introducer. *Id.* Importantly, if the evidence on which the defendant was convicted was obtained personally by the government agents who testified, disclosure is not required. *United States v. Jenkins*, 4 F.3d 1338, 1341 (6th Cir. 1993). *See also Moore*, 954 F.2d at 380-81.

In the present case, the information provided by the informants concerned Bailes, not Dexta. Furthermore, the evidence offered at trial concerning Bailes was obtained personally by the government agent who testified. Detective Narramore personally witnessed Bailes place a pound of methamphetamine underneath his shirt before meeting with one of the informants for a pre-arranged drug buy. Although the informants were involved in setting up the drug buy with Bailes, they did not personally witness the transaction and the government did not rely on their testimony at trial. Detective Narramore also testified at trial that the confidential informants had no interaction with Dexta. The testimony of a law enforcement officer that the government's informants had no contact with the defendant is more likely to persuade a jury than the same testimony offered by a

15

drug dealing informant.  Furthermore, as the government correctly notes, because the proof offered at trial demonstrated that the informants were not acquainted with Dexta, Dexta was free to argue that the informants did not know him as part of Bailes's drug ring.

We are also not persuaded by Dexta's argument that there is little public interest in protecting the identity of the deceased informant.  In fact, disclosure of the deceased informant's identity might lead to retribution against members of his/her family.

Dexta also alleges that the Magistrate Judge did not consider the crime charged, the possible defenses, the possible significance of the informant's testimony, and other relevant factors prescribed by *Roviaro* in reaching his finding.  Contrary to Dexta's contentions, the Magistrate Judge adequately considered these factors in determining whether disclosure was warranted in this case.  The Magistrate Judge considered the possible significance of the informants' testimony when he noted that the informants did not provide the government agent with any evidence inculpating Dexta; he considered the possible defenses when he acknowledged Dexta's argument that the absence of inculpatory evidence implies that the defense might be able to question the informants and elicit evidence tending to exculpate Dexta; and he considered the crime charged when he found that most drug dealers will not introduce their suppliers to their customers.

Although Dexta makes a number of claims regarding the possible assistance that the informants could provide to his defense, these claims are unsubstantiated.  As the district court aptly stated, this type of conjecture is insufficient to satisfy the defendant's burden of demonstrating that disclosure would substantively assist his defense.  Accordingly, the district court did not err when it denied Dexta's motion to disclose the identities of the government's confidential informants.

B.      **Cross-examination**

16

We review the district court's evidentiary rulings for an abuse of discretion. *United States v. Pugh*, 405 F.3d 390, 397 (6th Cir. 2005). Dexta argues that the government, during cross-examination of two defense witnesses, introduced irrelevant, highly prejudicial testimony that Carlos Cotto and Karen Santos Torres were arrested in a completely unrelated matter with two pounds of methamphetamine one month after Dexta's arrest. He claims that this information misled the jury into considering other crimes perpetrated by individuals who were not standing trial and were not called as witnesses. Furthermore, Dexta argues that even if Cotto and Santos Torres were arrested with two pounds of methamphetamine one month after Dexta's arrest, that information has no probative value. Accordingly, Dexta claims that the district court erred by allowing the evidence and failing to grant a mistrial, and requests that this case be remanded for a retrial.

Dexta also argues that the district court erred when it overruled his objection during the aforementioned cross-examination and that the district court specifically disregarded the basis for his objection. Specifically, Dexta contends that the district court misconstrued his objection, which was partly based on Federal Rules of Evidence 401 and 403, and instead ruled on whether the government had a good faith basis for its inquiry. Dexta alleges that when he clarified his objection, the district court still misunderstood the grounds for his objection, and when defense counsel raised the issue as grounds for a mistrial, the district court again stated that it believed the grounds for defense counsel's objection were that the government did not have a good faith basis for the question.

The government is entitled to attack the credibility of a defense witness by exposing her bias. *See* FED. R. EVID. 607; *United States v. Arnold*, 890 F.2d 825, 828 (6th Cir. 1989) (citing *United States v. Abel*, 469 U.S. 45, 51 (1984)); *Schledwitz v. United States*, 169 F.3d 1003, 1015 (6th Cir.

17

1999). Dexta cites no case law prohibiting the government, or any party, from asking a witness about the illicit activities of individuals who were neither named in the indictment nor witnesses in the case. The government was entitled to expose Ana Dexta's and Christopher Montalvo's bias against the government by eliciting testimony that individuals with whom they were associated were arrested for drug dealing. The government was also entitled to attack Ana Dexta's credibility when she provided an innocent explanation for her husband's relationship with Bailes, and to elicit testimony tending to link Dexta to methamphetamine distribution. In fact, when defense counsel moved for a mistrial on this very issue, the district court indicated that the government could properly attempt to expose a defense witness's bias by asking that witness about the arrests of Cotto and/or Santos Torres.

Furthermore, the government's cross-examination of Ana Dexta and Christopher Montalvo regarding their association with Cotto and Santos Torres and knowledge of their illicit activities did not take place in a vacuum. This questioning took place after other witnesses, namely Bailes and Narramore, had testified to an association between Dexta and Cotto, and after Yamaris Santiago had testified to an association between Dexta, Cotto and Santos Torres. Accordingly, the district court did not err in allowing the government's questioning and denying Dexta's request for a mistrial.

Dexta argues that evidence regarding the arrests of Cotto and Santos Torres was highly prejudicial under Federal Rule of Evidence 403. "A court may exclude relevant evidence under Rule 403 if its 'probative value is substantially outweighed by the danger of unfair prejudice.'" *United States v. Talley*, 164 F.3d 989, 1000 (6th Cir. 1999). "[A] defendant raising a Rule 403 argument must establish 'unfair' prejudice, not mere prejudice. 'Unfair prejudice does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather

18

it refers to evidence which tends to suggest a decision on an improper basis.'" *Id.* (quoting *United States v. Bonds*, 12 F.3d 540, 567 (6th Cir. 1993)). On appeal, Dexta merely states that the defense witnesses would not have known about the current status of the criminal prosecutions of Cotto and Santos Torres, that the arrests have no probative value, and that the jury cannot be expected to remain fair and impartial after hearing about the criminal propensities of Cotto and Santos Torres. Dexta has not shown that the evidence introduced through the witnesses regarding these arrests caused unfair prejudice. Furthermore, during cross-examination, Dexta himself testified – without objection – that he heard about Carlos Cotto's arrest.[4]

Dexta's argument that the district court disregarded the basis for his objection is also without merit. Even if the district court initially misconstrued defense counsel's objection when it ruled that the government had a good faith basis for its question, the record reveals that on the following day the district court correctly understood the basis of defense counsel's objection when counsel moved for a mistrial. Even if the district court misconstrued the objection again, Dexta has not established that the probative value of the witness's response to the questioning was substantially outweighed by unfair prejudice.

Dexta argues for the first time on appeal that the government's cross-examination elicited improper propensity evidence of other crimes under Federal Rule of Evidence 404(b), and was not introduced through the correct witness (Cotto or Santos Torres). Because Dexta did not object on

---

[4]Although Dexta raised two arguments in the district court in support of his claim for unfair prejudice, he does not raise them on appeal. Accordingly, these arguments are considered abandoned and not reviewable on appeal. *Robinson v. Jones*, 142 F.3d 905, 906 (6th Cir. 1998). Even if we were to entertain these arguments, they do not support a finding of unfair prejudice. The argument that information about the arrests would lead the jury to believe that Cotto could be just as guilty as Dexta, and the argument that the testimony of Ana Dexta, acknowledging that she knew about the arrest, would prevent the jury from being impartial and basing its decision strictly on the evidence and the law are completely devoid of merit because Dexta himself testified during cross-examination that he heard Cotto was arrested. Defense counsel neither objected to this testimony below nor raises it as grounds for the present appeal.

this basis below, we review only for plain error. *United States v. Evans*, 883 F.2d 496 (6th Cir. 1989) (citation omitted); *United States v. Demjanjuk,* 367 F.3d 623, 630 (6th Cir. 2004). Here, Dexta cannot even establish the first prong of the plain error test – that an error occurred. *United States v. Cline*, 362 F.3d 343, 348 (6th Cir. 2004) (citing *United States v. Koeberlein*, 161 F.3d 946, 949 (6th Cir. 1998)) (listing requirements for establishing plain error). Pursuant to Federal Rule of Evidence 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." The government did not introduce evidence of Cotto's and Santos Torres's arrests to prove the character of any witness. Rather, the government sought to impeach the witnesses by showing possible bias against the government. This is entirely permissible under the Federal Rules of Evidence. *See United States v. Arnold*, 890 F.2d 825, 828 (6th Cir. 1989) (citing *United States v. Abel*, 469 U.S. 45, 51 (1984)). Accordingly, because the government engaged in fair and proper cross-examination of Ana Dexta and Christopher Montalvo, the district court did not abuse its discretion in allowing the questioning and denying the motion for a mistrial.

### C.     Sentence enhancements

Dexta argues that the sentence imposed by the district court is not authorized by the facts admitted by him or established by the jury verdict. At oral argument, the government agreed that the case should be remanded for re-sentencing in light of the U.S. Supreme Court's ruling in *United States v. Booker*, 543 U.S. ___, 125 S. Ct. 738 (2005).

The district court erred by imposing a sentence greater than the maximum authorized by the facts admitted by Dexta or established by the jury verdict, and by imposing that sentence based on a mandatory Guidelines regime. *See United States v. Oliver,* 397 F.3d 369, 378 (6th Cir. 2005);

20

*United States v. Barnett,* 398 F.3d 516, 525-26 (6th Cir. 2005). At the sentencing hearing, the district court attributed at least 500 grams but less than 1.5 kilograms of methamphetamine to Dexta – an amount beyond that alleged in the indictment – and applied a two-level enhancement for obstruction of justice under U.S. Sentencing Guidelines § 3C1.1 after making a specific finding that Dexta committed perjury at trial.[5] Neither the drug quantity nor the obstruction of justice finding were based on facts admitted by Dexta or established by the jury verdict. Accordingly, the district court applied the then-mandatory Sentencing Guidelines to enhance Dexta's sentence from a base offense level of 26, Criminal History Category I (63-78 months), to an adjusted offense level of 34, Criminal History Category I (151-188 months) in violation of *Booker*.[6]

### III. CONCLUSION

Based on the foregoing, we **VACATE** Dexta's sentence and **REMAND** for re-sentencing in light of the U.S. Supreme Court's opinion in *Booker*. As to the other errors raised by Dexta, we **AFFIRM** the judgment of the district court.

---

[5] At the beginning of the sentencing hearing, the district court placed the parties on notice that it might consider the testimony of Yamaris Santiago, who first testified as a defense witness and later returned to the stand as a rebuttal witness, in evaluating whether Dexta obstructed justice. After hearing argument on the issue, the district court did not make a finding with respect to Santiago's testimony, but reserved the right to make a specific finding that her testimony, and Dexta's act of calling her as a witness, amounted to an obstruction of justice.

   If the district court revisits this issue on remand, it is important to note that contrary to the district court's assertions, Santiago did not recant (i.e., she did not renounce, retract or contradict) her earlier testimony. When Santiago testified as a defense witness, she never testified that Dexta sold, purchased or dealt in drugs. In fact, she was never asked any of these questions. Santiago was later called by the government as a rebuttal witness, testifying that she had seen Dexta with drugs, and heard fights between Dexta and his wife concerning her disapproval of his drug dealing.

[6] At sentencing, Dexta requested that the district court sentence him at a base offense level of 30, Criminal History Category I (97-121 months), after conceding to the one pound of methamphetamine seized on the date of his arrest. *See* U.S. Sentencing Guidelines § 2D1.1(c)(5). On appeal, however, Dexta asserts that the correct base offense level is 26, which corresponds to the amount specified in the indictment and found by the jury (50 grams of methamphetamine). *See* U.S. Sentencing Guidelines § 2D1.1(c)(7).